455 So.2d 689 (1984)
Norman CARTER, Plaintiff-Appellant,
v.
Dianne FLANAGAN, et al, Defendants-Appellees.
No. 16327-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*690 Northwest Louisiana Legal Services, Inc. by Donald L. Bullock, Shreveport, for plaintiff-appellant.
*691 Wayne H. Cobb, Jr., Curator Ad Hoc, Shreveport, for Dianne Flanagan, defendant-appellee.
Hal V. Lyons, Shreveport, for Rogers Loan Co., Inc., defendant-appellee.
Thomas & Burchett, by Dewey E. Burchett, Bossier City, for J. Waddy Tucker & Nat. Union Fire Ins., defendants-appellees.
Before PRICE, MARVIN and NORRIS, JJ.
PRICE, Judge.
Plaintiff, Norman Carter, brought this action seeking cancellation of a fraudulent conveyance and mortgage affecting his residence in Caddo Parish. Defendants are Dianne Flanagan, the perpetrator of the fraud, and Rogers Loan Co., who granted a loan to Flanagan based on the security of a mortgage granted by Flanagan on the subject property.
Rogers Loan filed a third party demand against J. Waddy Tucker, a notary before whom the fraudulent conveyance was executed, alleging negligence on the part of the notary. Tucker also brought a third party demand against the plaintiff Carter based on unjust enrichment. The trial court awarded judgment in favor of plaintiff on the original demand, and in favor of both third party plaintiffs on the incidental demands. Plaintiff appeals the judgment ordering him to pay Tucker $3,881.87, representing the balance owed by Carter on a mortgage note to Republic Bank. This note was paid off out of the proceeds of the loan from Rogers Loan in the course of the fraudulent transaction perpetrated by Flanagan.
Defendant Flanagan and an accomplice who purported to be Norman Carter appeared before Tucker and executed a cash sale deed by which Carter's house was conveyed to Flanagan. Flanagan then took a certified copy of the deed and induced Rogers Loan Co. to make her a loan with a mortgage on the house as collateral. As a mortgage certificate showed the property was already burdened by a mortgage given by Carter to Republic Bank, Rogers required the sum of $3,881.87 from the loan proceeds be paid to Republic to pay off the balance owed on the Carter mortgage.
The forgery was discovered when the real Norman Carter continued to make payments on the note to Republic, which refunded the payments and informed him that his loan had been paid off by check from Rogers Loan Co. He began to inquire into the matter and it was discovered that the man who signed the cash sale deed conveying the property to Flanagan was an imposter. Plaintiff then filed this suit against Flanagan and Rogers to have both the cash sale deed and the mortgage cancelled. He also filed a criminal complaint against Flanagan who promptly left the area for parts unknown to avoid criminal prosecution. Rogers then filed a third party demand against J. Waddy Tucker, the notary on the cash sale deed, and his liability insurer for damages sustained in making the loan based on his negligence in failing to check the identification of the parties executing the sale. Tucker filed a third party demand against Carter for the benefit received by him in having his debt to Republic liquidated as a consequence of these illegal transactions.
After trial on the matter, judgment was rendered in favor of Carter, ordering cancellation of the deed and the mortgage and dismissing the third party claims without prejudice. Upon the partial granting of a motion for new trial, reargument was heard and an amended judgment rendered, granting the third party demand of Rogers against Tucker in the amount of the balance due on its loan to Flanagan, and Tucker's third party demand against Carter.
Carter appeals only the granting of Tucker's third party demand, contending he is not liable for repayment of the portion of the loan used to pay off his mortgage note under the principles of unjust enrichment or any other theory of law. None of the other parties have appealed or answered the appeal. Thus, the only issue before this court is whether Tucker is entitled to recover from Carter on the basis of unjust enrichment.
*692 The essential basis for the remedy for enrichment lacking in legal cause is the principle of natural justice which requires that no one should be enriched at the expense of another. This principle is embodied in our law by Louisiana Civil Code Articles 21 and 1965. Certain limitations, designed to restrict the use of equity to cases where one party truly receives a windfall from another without legal cause, are placed on such actions by the jurisprudence of Louisiana courts.
The prerequisites which must be satisfied to successfully invoke the action for unjust enrichment were set forth by the Louisiana Supreme Court in Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La. 1974). There must be: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and the impoverishment, and (5) no other remedy at law available to the impoverishee.
In the instant case there was clearly an enrichment of Carter in the sense that an economic benefit has been added to his patrimony. The balance due on his note to Republic Bank has been satisfied without payment on his part. He no longer owes the money to the bank and his property is free and clear of the mortgage.
There was likewise an obvious impoverishment of Tucker in that he has been held to account to the loan company for all funds disbursed in the loan transaction, including the sum which went to Republic Bank for payment of Carter's note. This circumstance also establishes the causal connection between the enrichment and the impoverishment. There has thus been an unjust enrichment in terms of an economic benefit added to Carter's patrimony to the economic detriment of Tucker's patrimony, through the intervention of Flanagan and Rogers Loan, without the corresponding transfer of an adequate compensation. See Tate, The Louisiana Action for Unjust Enrichment, 50 Tul.L.Rev. 883 (1976).
The two remaining requirements for recovery under unjust enrighmentlack of justification and absence of any other remedy at lawgive rise to the critical questions on this appeal.
Not every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee. Edmonston v. A-Second Mortgage, supra.
In the instant case there was no juridical act between the enrichee and either Tucker (the impoverishee) or Rogers (a third party). We do not perceive any other type of justification in law for this enrichment since Carter was not ultimately caused any damage as a result of the fraudulent execution. Carter has received a true windfall as a result of a fraudulent scheme and Tucker is out the sum of money which Flanagan used to pay the note. In view of the singular absence of connexity in law or contract between the enrichee and the impoverishee or the third party, we find that there is a lack of cause for this enrichment.
We further conclude the fifth requirement for a successful action for unjust enrichment has also been met. The action is available only where there is no other remedy at law. It is subsidiary in nature and will not be allowed to defeat the purpose of a rule of law directed to the matter at issue. Edmonston, supra. A plaintiff can recover in unjust enrichment only if there is no other practical remedy available by which the impoverishment might be or might reasonably have been avoided. Tate, The Louisiana Action for Unjustified Enrichment, supra.
The primary responsibility for the impoverishment caused here lies, of course, with Flanagan as the perpetrator of the fraud. However, as noted by the trial court, it is conceded by all parties that her whereabouts are unknown even though she is being actively sought by law enforcement *693 officials. This is not a case in which the impoverished party has chosen not to pursue a viable means of recovery from the person ultimately responsible for the losses caused on all sides, as in Royal Oldsmobile Co., Inc. v. Yarbrough, 425 So.2d 823 (La. App. 5th Cir.1982), cited by Carter. On the contrary, that avenue has effectively been denied the third party plaintiff by Flanagan's disappearance. Thus, there is no practical remedy available to Tucker against Flanagan.
This case involves the payment of the debt of another by Rogers and the ensuing obligation of Tucker to repay it. However, the principles of quasi contract enunciated in the Louisiana Civil Code are not applicable here. The money cannot be recovered from the bank as payment of a thing not due under Article 2301 since the debt was owed and Republic presumably accepted payment in good faith. Nor is this case governed by the law on negotiorum gestio, Civil Code Articles 2295-3000, because there was no intent to benefit Carter on the part of either Tucker or Rogers.
Carter points to two rules of law which he contends would be defeated by allowing Tucker to recover under unjust enrichment. He argues first that Tucker's negligence precludes recovery because equity may not be used to aid one "who comes into court with unclean hands." Rhodes v. Miller, 189 La. 288, 179 So. 430 (La.1938). We do not perceive that Tucker's conduct, under the particular circumstances of this case, is the type of unlawful or inequitable conduct which the "clean hands" rule was designed to deter.
Flanagan and the Carter imposter had consulted with Tucker's law partner on the matter of executing the cash sale deed and provided all the necessary information. On the day the act was to be passed, Tucker, who knew nothing of the facts underlying the transaction, was the only person available in the office to conclude the formalities and did so under the obvious assumption that all other particulars had been handled by the other attorney or his secretary. This does not excuse his negligence, by any means, but he was as much a victim of the fraud as anyone else.
The Rhodes court stated:
The courts recognize the rule that every suitor who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question. This rule is known in equity as the rule of "clean hands."
The court must apply the rule not because it is a matter of defense, but because it is against public policy to hear the case if the unconscionable character of the matter or transaction be established. The court acts for its own protection rather than for the protection of the defendant. Id., 179 So. at p. 432.
Considering the factual situation of this case, we do not believe allowing recovery despite Tucker's fault would subvert the policy behind this rule designed to protect the court system from manipulation by those who invoke the law against others but deny its applicability to themselves. Due to the finality of the judgment against him from which no appeal was taken, Tucker's liability is settled. In his third party demand, he simply seeks reimbursement of a part of the damages he must pay from one who received a benefit to which he was not entitled by having his debt paid for him.
Carter also urges recovery would defeat the rule of law that a person paying by mistake cannot recover the payment where the mistake was caused entirely by his own gross carelessness, citing Metropolitan Life Ins. Co. v. Mundy, 167 So. 894 (La. App. 1st Cir.1936). We disagree.
That case involved the construction of Louisiana Civil Code Article 2310 which provides that one who, through mistake, has paid the debt of another to whom he believed himself indebted has a claim to restitution from the creditor. The court, in denying recovery to the plaintiff, characterized the mistake referred to by the code article as the honest or unavoidable mistake that a usually prudent person might make under certain circumstances. It was *694 the gross carelessness of the plaintiff in Metropolitan in paying out the proceeds of a life insurance policy when it was fully aware that there were conflicting claims to the funds which led the court to deny recovery.
The instant case is clearly distinguishable from the circumstances in Metropolitan. The mistaken payment here was made due to the fraud of Flanagan, rather than simply a mistaken belief of indebtedness to Carter on the part of the loan company which initially paid the debt. It is true the mistake giving rise to the situation is attributable to Tucker. However, the party who paid the debt is not seeking return of the money from the creditor. We do not believe Article 2310 or its limitations were intended to apply to a factual situation such as this, where one party has paid due to the mistake of another, who incurs liability for the mistaken payment and seeks reimbursement from the true debtor.
Even if this principle found application here, the negligence is not in the nature of such gross carelessness as described in Metropolitan that it would bar recovery on an equitable basis. It is more in the nature of an honest mistake. Thus, we find that allowing recovery for unjust enrichment would not do damage to that particular rule of law.
Having found all the prerequisites for recovery on the basis of unjust enrichment to be present, we discern no error in the trial court judgment in favor of Tucker in the amount by which Carter was enriched in the payment of his debt by a third party. In fact, the judgment was eminently fair in providing that Carter make a monthly payment in acquittance of the debt, as he would have to the bank, thereby ensuring no more hardship to him than if the note had not been paid at all.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.