United States Court of Appeals,

Fifth Circuit.

No. 91–4849

Summary Calendar.

SMP SALES MANAGEMENT, INC., Plaintiff–Appellant,

v.

FLEET CREDIT CORPORATION, Defendant–Appellee.

May 15, 1992.

Appeal from the United States District Court for the Western District of Louisiana.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff-appellant SMP Sales Management, Inc. (SMP) sued Fleet Credit Corporation (Fleet) for Fleet's alleged interference with SMP's contract with Wonderline, Inc. (Wonderline), or alternatively for amounts due under a theory of unjust enrichment. Upon submission of the case on written evidence, the district court found for Fleet. Finding no error, we affirm.

I.

On or about June 30, 1986, SMP entered into a three-year contract with Wonderline to be its exclusive sales representative. On June 30, 1986, Fleet and Fleet National Bank made certain loans to Wonderline which were secured by most, if not all, of the assets of Wonderline. Fleet's collateral included an assignment of accounts receivable of Wonderline. By September, 1987, Wonderline had defaulted on the repayment of these loans from Fleet, which, at the time of default, carried a principal balance of approximately $6,500,000.

By petition for executory process filed on October 5, 1987, in the 26th Judicial District Court for Bossier Parish, Louisiana, Fleet and Fleet National Bank foreclosed on certain of the assets of Wonderline. By order signed by the Bossier Parish Clerk of Court, the sheriff of Bossier Parish was

directed to seize and sell certain assets of Wonderline and Fleet was appointed, pursuant to La.Rev.Stat. 9:5138, as the "keeper" of the seized assets.

On March 30, 1988, the assets of Wonderline were sold at Sheriff's Sale to Rotocast Plastic Products, Inc. for the sum of $2,500,000. On March 31, 1988, Wonderline, Fleet and Fleet National Bank transferred Wonderline's remaining accounts receivable to Rotocast.

SMP was never employed by Fleet and never had a contractual relationship with Fleet. Fleet never assumed the obligations of Wonderline under the contract and no one at Fleet ever gave SMP any indication that Fleet would pay the expenses or commissions owed to SMP by Wonderline under the contract. Mr. Pollack, the President of SMP, admitted that the sole basis of SMP's claim against Fleet was its contention that Fleet interfered with the contract by coercing, advising or otherwise instructing Wonderline not to pay the sums due to SMP under the contract. He admitted that these claims were based entirely on statements made by Wonderline officers to Mr. Pollack, and not on his own personal knowledge.

Mr. Pollack admitted that by August of 1987, SMP became aware of the facts which formed the basis for its contention that Fleet interfered with the contract. He also admitted that SMP was aware that the assets of Wonderline were sold to Rotocast on March 30, 1988. Also, SMP never made a claim against Wonderline or sued Wonderline for the amounts allegedly due under the contract. SMP filed suit against Fleet in Louisiana state court on November 10, 1989; Fleet removed the action to federal district court based on diversity of citizenship.

## II.

The trial court's findings based on depositions and stipulations are entitled to the same standard of review that they would receive if based on oral, courtroom testimony. The findings must be upheld unless they are clearly erroneous. *See* Fed.R.Civ.Proc. 52(a). The district court's

application of law is reviewed *de novo.*

III.

SMP contends that Fleet interfered with its contract by coercing, advising or otherwise instructing Wonderline not to pay the amounts due thereunder. This is a "tortious interference with contractual relationships" claim, a newly recognized theory of liability in the state of Louisiana. *See 9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La.1989). Tortious interference with contract is a tort, based on duties arising from La.Civ.Code Art. 2315. *Id.* at 231–34. Actions in tort are delictual actions, subject to a one year liberative prescription. La.Civ.Code Art. 3492. This prescription commences to run from the day injury or damage is sustained. *Id.* Louisiana courts maintain that prescription on the tort claim begins to run "on the date the injured party discovers or should have discovered the facts upon which its cause of action is based." *Griffen v. Kinberger,* 507 So.2d 821, 823 (La.1987).

SMP knew of the interference as early as August 1987, and was aware of the sheriff's sale when it happened on March 30, 1988. It did not file suit until November 10, 1989, over one year from its knowing of its cause of action. The ending date of the contract is of no importance. Therefore, the plaintiff's cause of action for tortious interference with contract has prescribed.[1] The district court's factual determination of when SMP knew of the alleged tortious interference is not clearly erroneous, and it was correct in finding the claim prescribed.

IV.

Due to the absence of an express, written contract between SMP and Fleet Credit, SMP sought recovery in the court below on quasi contractual theories--unjust enrichment, *quantum meruit,*

---

[1] Because we find that the action has prescribed, we need not not address whether the "tortious interference with contractual relationships" cause of action would even apply here, which is doubtful. *9 to 5,* 538 So.2d at 234 (court did not adopt the fully expanded common law doctrine of interference with contract).

and *negotiorum gestor.* The Louisiana Civil Code recognizes only two nominate types of quasi contracts[2]: the transaction of another's business (*negotiorum gestor*) and the payment of a thing not due (money had and received). La.Civ.Code Art. 2294. Appellant sought recovery in the court below on theories of *negotiorum gestor* and "unjust enrichment" and claims error by the district court in denying relief.

First, SMP claims that the district court wrongly denied its claim for "unjust enrichment." Louisiana does recognize an action for "unjust enrichment." *Oil Purchasers, Inc. v. Kuehling,* 334 So.2d 420, 425 (La.1976); *Edmonston v. A–Second Mortgage Co.,* 289 So.2d 116 (La.1974); *Minyard v. Curtis Products, Inc.,* 251 La. 624, 205 So.2d 422, 427 (1968). In order to establish a claim of unjust enrichment, the plaintiff must prove five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment or impoverishment, and (5) no other remedy at law. *Edmonston,* 289 So.2d at 120. Appellant also sought recovery on a *quantum meruit*[3] basis. Although both the district court and the parties relied on *quantum meruit* as a substantive basis of recovery, it is not recognized as such in Louisiana but is only used as a measure of compensation or price in quasi-contract or when none is stated in a contract. *Morphy, Makofsky & Masson v. Canal Place 2000,* 538 So.2d 569, 574–75 (La.1989).[4]

---

[2]**Art. 2293. Quasi contracts, definition**

> Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.

[3]*Quantum meruit* is an equitable doctrine based on the principle that one who benefits from another's labor and materials should not be unjustly enriched thereby. *Wilkins v. Hogan Drilling Co., Inc.,* 471 So.2d 863, 867 (La.App. 2d Cir.1985).

[4]*Quantum meruit* as a substantive law claim is "geared to equity and unjust enrichment, something of a counterpart to the civilian *actio de rem verso. Morphy, Makofsky & Masson v. Canal Place 2000,* 538 So.2d 569, 574 (La.1989). *Quantum meruit* is only recognized in Louisiana as a descriptive term of the measure of compensation or price which is unstated in action on a contract or quasi-contract. *Id.* (citations omitted).

The district court denied recovery because it found that Fleet had not been unjustly enriched. As noted by the district court,

> The actions taken by Fleet are indistinguishable from those taken by any secured creditor, in that the labor of unsecured creditors renders the secured creditor's position more attractive than it would have been absent the actions of the unsecured creditor. It does not follow, however, that by enjoying the status as a secured creditor one has been enriched.... Fleet obviously suffered a loss in this case, but because of the efforts of many unsecured creditors suffered less of a loss than it might have. This does not mean that all such unsecured creditors are therefore entitled to bring an unjust enrichment action."

Memorandum Opinion at 7. We agree with the findings of the district court. As noted by one Louisiana court:

> Not every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee.

*Carter v. Flanagan,* 455 So.2d 689, 692 (La.App. 2d Cir.1984) (*citing Edmonston v. A–Second Mortgage Co.,* 289 So.2d 116 (La.1974)). In the instant case, there is a justification in law. There was a contractual relationship between Fleet and Wonderline and, as a secured creditor of Wonderline, Fleet would be entitled to be paid first. Allowing unsecured creditors to recover on a theory of unjust enrichment would render the secured creditor status useless. The secured creditor is entitled to be paid first. Here, Fleet loaned over $6,500,000 to Wonderline and received in return only $2,500,000. Fleet was not unjustly enriched, and this is not a case in which equity would apply. There has been no enrichment of Fleet in this circumstance. The district court was correct in so holding.

V.

Second, SMP claims that the district court misapplied La.Civ.Code Art. 2295—*negotiorum gestor.* This article provides that when one takes of his own accord to manage the affairs of another,

he assumes the payment of expenses attending the business.[5] The district court was correct in holding the article inapplicable or that SMP simply failed in its burden of proof.

First, SMP failed to prove that Fleet, prior to October 5, 1987, undertook to manage the affairs of Wonderline. The evidence consists of hearsay and inadmissible evidence. SMP admitted that Fleet did not assume Wonderline's obligations under the SMP contract. Second, from October 5, 1987, through March 30, 1988, Fleet became the court-appointed "keeper" of certain of Wonderline's assets. Therefore, this undertaking would neither be "unauthorized" nor "of Fleet's own accord" as required under the statute. There is no authority for holding a "keeper" responsible for the debts of the person when his assets have been seized. Therefore, SMP's theory of recovery based on negotiorum gestor would also fail.[6] The decision of the district court based on negotiorum gestor is affirmed.

## VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[5] **Art. 2295. *Unauthorized* management of another's affairs;  negotiorum gestor.**

> When a man undertakes, *of his own accord,* to manage the affairs of another, ... the person assuming the agency contracts the tacit engagement to continue it and to complete it, until the owner shall be in a condition to attend to it himself;  he assumes also the payment of the expenses attending the business.

[6] Actually, the theory of negotiorum gestor would not appear to apply here. "[T]he Supreme Court of Louisiana has held that before anyone can be considered a *negotiorum gestor* he must have intended to act in the interest of another and not for himself." *De Blanc v. Texas Co.,* 121 F.2d 774 (5th Cir.1941) (citations omitted). It is undisputed that Fleet did not intend to act in the interest of Wonderline. Fleet acted as keeper and took over the business to protect its own interest. Therefore, *negotiorum gestor* would not apply.