# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 31, 2012

Lyle W. Cayce
Clerk

No. 11-30607

CITY OF NEW ORLEANS

        Plaintiff – Appellee Cross-Appellant

COUNCIL FOR THE CITY OF NEW ORLEANS

        Intervenor Plaintiff – Appellee Cross-Appellant

v.

BELLSOUTH TELECOMMUNICATIONS, INCORPORATED,
doing business as AT&T Louisiana,

        Defendant – Intervenor Defendant – Appellant
        Cross-Appellee

---

Consolidated with
No. 11-31058

CITY OF NEW ORLEANS

        Plaintiff

v.

BELLSOUTH TELECOMMUNICATIONS, INCORPORATED

        Defendant

---

BELLSOUTH TELECOMMUNICATIONS, L.L.C., doing business as AT&T Louisiana,

No. 11-30607
consolidated with
No. 11-31058

Plaintiff – Appellant

v.

CITY OF NEW ORLEANS; NEW ORLEANS CITY COUNCIL; JACQUELYN BRECHTEL CLARKSON, solely in her official capacity as member of the Council of the City of New Orleans; ARNIE FIELKOW, solely in his official capacity as member of the Council of the City of New Orleans; SUSAN G. GUIDRY, solely in her official capacity as member of the Council of the City of New Orleans; STACY HEAD, solely in her official capacity as member of the Council of the City of New Orleans; KRISTIN GISLESON PALMER, solely in her official capacity as member of the Council of the City of New Orleans; CYNTHIA HEDGE-MORRELL, solely in her official capacity as member of the Council of the City of New Orleans; JON D. JOHNSON, solely in his official capacity as member of the Council of the City of New Orleans; MITCHELL JOSEPH LANDRIEU, also known as Mitch Landrieu, solely in his official capacity as Mayor of the City of New Orleans,

Defendants – Appellees

Appeals from the United States District Court
for the Eastern District of Louisiana

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

GARZA, Circuit Judge:

The City of New Orleans ("the City") filed suit against BellSouth Telecommunications, L.L.C. ("BellSouth," or "the company"), claiming that the company owed it additional compensation for the use of its public rights-of-way. After a bench trial, the district court issued findings of fact and conclusions of law that rejected the City's claims for additional compensation pursuant to the various contracts between the parties. However, the court awarded the City unjust enrichment damages in the amount of $1,549,240.93 to compensate the

2

No. 11-30607
consolidated with
No. 11-31058

City for benefits the company had received from its use of the City's rights-of-way from the end of 2006 to the time of judgment. Both parties appealed.

After the court entered an order indicating its method for calculating the amount of unjust enrichment damages, the City enacted an ordinance intended to force BellSouth to continue compensating the City in future years for the unjust enrichment identified by the district court. BellSouth moved for a preliminary injunction to enjoin the City from enforcing the ordinance pending its appeal from the district court's judgment. The district court denied the injunction. BellSouth appealed, and we consolidated the various appeals.

For the following reasons, we AFFIRM the district court's findings of fact and conclusions of law, in part, to the extent the court rejected the City's claims for damages. We REVERSE and VACATE the district court's judgment awarding unjust enrichment damages to the City. Given the latter holding, we need not decide BellSouth's appeal concerning its request for a preliminary injunction. We REMAND to the district court with instructions to permanently enjoin enforcement of the 2011 Ordinance.

**I**

The parties' contractual relationship began in 1879 when the City Council enacted Ordinance No. 4906 ("1879 Ordinance"). Section 1 of the 1879 Ordinance authorized BellSouth[1]

> to construct and maintain a line or lines of telegraphs through the streets of this city, the line or lines to be constructed along such streets, at such points and in such manner as to the kind and position of the telegraph poles, the height of the wires above the streets, and in all other particulars, as the Administrator of the Department of Improvements of this city may direct; provided, however, that the said company shall connect their wires with the

---

[1] We use "BellSouth" to also refer to all of its predecessors in interest.

No. 11-30607
consolidated with
No. 11-31058

> Mayor's office, chief of police office and fire alarm telegraph office, and place and keep telephones therein, free of charge to the city, so that the said telephones may be used in connection with all wires under the control of said company.

New Orleans, La., Ordinance 4906 (Feb. 18, 1879).

Section 2 of the 1879 Ordinance provided "[t]hat all the acts and doings of said company under this ordinance shall be subject to any ordinance or ordinances that may hereafter be passed by the City Council concerning the same." *Id.* BellSouth provided the free phones to the City and used the City's rights-of-way to construct and maintain telecommunications lines pursuant to the 1879 Ordinance.

In 1880, the Louisiana legislature enacted Act. 124, which granted corporations formed "for the purpose of transmitting intelligence by magnetic telegraph or telephone or other system of transmitting intelligence, the equivalent thereof which may be hereafter invented or discovered" the right to "construct [and] maintain such telegraph, telephone or other lines necessary to transmit intelligence along all State, parish or public roads or public works." 1880 La. Acts 168 (codified as amended at LA. REV. STAT. § 45:781(A)). The Act also permitted companies to construct and maintain lines "along the streets of any city, with the consent of the council or trustees thereof." *Id.*

Apparently discontent with its consideration under the 1879 Ordinance, the City passed a new ordinance in December 1883, which purported to "regulate and control the erection and maintenance of poles for supporting wires of the telephones within [the City]"; the Ordinance provided, *inter alia*, that

> No poles shall be allowed to be erected, *or any existing poles be allowed to remain*, in [a certain] portion of the city . . . , *except on the payment of $5 per annum per pole for every such pole* erected or *at present in use* within that section of the city[;] said payments to be *in consideration of the privilege and advantage of entering upon,*

4

No. 11-30607
consolidated with
No. 11-31058

*using, and permanently occupying the streets, ways and places of the city for private property*, and to be paid annually in advance . . . .

*City of New Orleans v. Great S. Tel. & Tel. Co.*, 3 So. 533, 534 (La. 1888) (citation omitted).

The City filed suit to enjoin BellSouth from using or maintaining the 600 poles it had erected in a designated portion of town until the company paid the amount due under the 1883 Ordinance. On appeal, the Louisiana Supreme Court invalidated the 1883 Ordinance, holding that the City could not exact additional consideration from BellSouth for the company's "continued enjoyment of privileges already granted." *Id.* at 535. The court concluded that because BellSouth had complied with the conditions of the 1879 Ordinance, the City's "grant of authority" to BellSouth had become an "irrevocable contract, and the city is powerless to set it aside or to interpolate new or more onerous considerations therein." *Id.* (citing *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819)).

In 1906, the City inquired "whether [BellSouth] would be willing to pay [the City] a considerable sum per annum for the use of the streets." BellSouth responded to the inquiry by letter. The company first stated that it was "in the enjoyment of a grant, made in 1879, which gave it for legal consideration the right to conduct its business and make use of the streets, and cannot therefore make any payment or contribution to the City as a consideration for a grant already acquired." However, "recognizing the fact that the grant has by reason of the great development of the telephone business proved to be of great benefit to the Company," BellSouth expressed its "willing[ness] to pay to the [City], quarterly, . . . three (3) per cent of its gross receipts from rentals paid by telephone subscribers for rental of telephones in [the City], so long as [BellSouth]

5

is alone operating in the city." The company further qualified its offer as follows: "Should any other person or company acquire the right to conduct a telephone exchange or business in the City, the Company would not feel justified in continuing its payments, and would cease to make them."

In response, the City Council adopted a motion to accept BellSouth's tender of 3% of its gross receipts for local telephone rentals, but "with the reservation that said tender . . . and the acceptance of said [tender] . . . shall in nowise constitute a contract between [BellSouth] and the [City] or bind the [City] to hereafter grant no other privileges for the use of streets in connection with the telephone business." BellSouth began making payments under the 1906 Agreement.

In 1916, BellSouth sent a letter to the City's Commissioner of Public Property, purporting to confirm a previous conversation involving BellSouth and certain City officials. In the letter, BellSouth agreed to provide the City with telephone service at regulated rates, less a 33.33% discount; the parties also agreed that the discount "would apply to all classes of service which are or may be furnished to the City or any of its Departments." The letter further stated that BellSouth would provide the City with 25 additional telephones, free of charge, "[i]n addition to the three free telephones which the Company furnishes to the City under its franchise obligation." BellSouth does not appear to have received any explicit consideration for its "additional" concessions in the 1916 Letter Agreement.

In 1984, the divestiture of AT&T broke the company into several smaller companies, including BellSouth. Under the divestiture, BellSouth could no longer own or provide telephone equipment to its customers. Accordingly, BellSouth could no longer provide free telephones to the City as required by the 1879 Ordinance and the 1916 Letter Agreement. To solve this problem, the

6

No. 11-30607
consolidated with
No. 11-31058

parties entered into the 1984 Concession Agreement. Under the Agreement, BellSouth agreed to make a lump sum payment of $417,285.18 to "cover the City's budgetary deficit for one year on the equipment portion of the concession," in exchange for the City's agreement "to a cap on the lines and service portion of the concession at the present dollar value, i.e., $31,407.21 monthly." The parties further agreed that the 1984 Concession Agreement would only amend the 1916 Letter Agreement, and it would not waive any of the City's other rights, including its rights under the 1906 Agreement—that is, BellSouth's obligation to pay the City 3% of its gross receipts from local recurring revenue. BellSouth has fulfilled its obligations under the 1984 Agreement, which involve making payments totaling $376,886.52 annually.

In 1996, the City Council enacted the Ordinance of General Applicability ("OGA"), to provide for uniform procedures, terms, conditions and compensation for telecommunications franchises that use the City's rights-of-way. New Orleans, La., Ordinance 17,560 (Feb. 1, 1996). The OGA applies to all franchisees occupying the City's rights-of-way for the purposes of regulating the installation, maintenance, repair and/or operation of wired telecommunications systems. However, the OGA distinguishes between new and existing franchisees to the extent it regulates the compensation owed to the City for the use of its rights-of-way. For compensation purposes, the OGA applies to pre-existing franchises only if those franchises "acknowledge susceptibility to an [OGA]." *Id.* The OGA provides that pre-existing franchises that do not acknowledge susceptibility to an OGA "shall remain subject to all existing provisions of such pre-existing franchise, as well as being subject to [certain non-compensation parts of the OGA]." *Id.* The compensation provisions of the OGA do apply, however, to all pre-existing franchises when they are renewed.

7

No. 11-30607
consolidated with
No. 11-31058

In early 2000, the City informed BellSouth of its belief that the company owed it an additional $7,250,983 under the 1906 agreement for the years 1997–1998.[2]  When BellSouth refused to pay, the City filed suit in Louisiana state court (1) to recover the outstanding compensation due under the 1906 Agreement and (2) to obtain a declaration that all future payments under the 1906 Agreement must be based upon 3% of the company's total gross receipts from the City, as opposed to 3% of its gross receipts from local recurring telephone services.  BellSouth removed the suit to federal court and filed a counterclaim seeking (1) a declaration that the 1906 Agreement had terminated since BellSouth was no longer the exclusive provider of telecommunications services in the City and (2) a return of all payments made under the 1906 Agreement after BellSouth was no longer the exclusive provider of telecommunications services in the City.[3]

In 2001, the parties settled their lawsuit and entered into the 2001 Settlement Agreement, which was ratified by the City Council.  The 2001 Settlement Agreement was "intended to fully and completely compromise, settle and finally terminate all of the disputes, claims and causes of action by and between BellSouth and the City with respect to the agreements and ordinances described herein and in the Pending City Suit."  The Settlement Agreement contained the following material terms: (1) the City expressly recognized the

---

[2] In 1994, the City had made a similar claim, and it had demanded additional compensation from the company under the 1906 Agreement.  BellSouth eventually agreed to pay the City $2.5 million as a credit against any future liability under the 1906 Agreement; BellSouth did not admit liability.

[3] The Federal Telecommunications Act of 1996 definitively introduced competition into the City's market for telephone services.  Nevertheless, BellSouth continued to make payments to the City under the 1906 Letter Agreement after other telecommunications providers had begun providing services in the City.

No. 11-30607
consolidated with
No. 11-31058

grant of rights conferred to BellSouth by the 1879 Ordinance, as interpreted and confirmed by the *Great Southern* court; the City also expressly recognized that it was not entitled to seek additional compensation or consideration from BellSouth for the rights conferred by the 1879 Ordinance; (2) the parties expressly recognized that the 1906 Agreement had terminated because other companies had acquired the right to conduct telephone business in the City; (3) BellSouth agreed to pay the City a fixed, annual amount of $5.5 million for six years, terminating in January 2006; and (4) the parties mutually released each other from all claims, whether known or unknown, that in any way concerned the 1879 Ordinance, the 1906 Agreement, or the 1984 Concession Agreement.

As "further consideration for the settlement embodied in th[e] agreement": (1) the Mayor agreed to publicly support state Simplified Tax Legislation; and (2) if Louisiana did not pass Simplified Tax Legislation prior to January 2007, the parties agreed that the City could elect, by ordinance "during the calendar year 2007," to enter into a Local Municipality Agreement ("LMA"), which would require BellSouth to pay the City 5% of its gross revenues from certain BellSouth Accounts. The Settlement Agreement provided that the LMA would have a maximum primary term of five years, and that it could be extended for one additional five year term if certain conditions were satisfied.

The Settlement Agreement further provided that the City would have no right to elect to enter the LMA if it failed to meet its obligations under the Agreement, which included the requirement that it enact an ordinance entering into the LMA during the calendar year 2007. Lastly, the parties agreed that the Settlement Agreement "shall form the entire and only agreement between the Parties and that no promises, inducement or other agreement expressed herein has been made."

9

No. 11-30607
consolidated with
No. 11-31058

BellSouth made the required $5.5 million annual payments through 2006. However, Louisiana did not pass the Simplified Tax Legislation, and the City Council did not pass an ordinance entering into the LMA during the calendar year 2007. Accordingly, starting in 2007, BellSouth was only paying the City $376,886.52 annually to use the City's rights-of-way under the 1984 Concession Agreement. When BellSouth refused the City's demand for additional compensation, the City filed the present lawsuit in January 2009.

In its complaint, the City asserted several claims for damages alleging that BellSouth owed it additional compensation for use of its rights-of-way. The City also sought various forms of declaratory relief that would allow it to subject BellSouth's franchise to the compensation provisions of the OGA. BellSouth answered and denied the City's claims. It also asserted a counterclaim against the City, seeking damages from certain payments it had made to the City pursuant to the 2001 Settlement Agreement and the 1906 Agreement.

The district court held a bench trial, and, in November 2010, it issued its findings of fact and conclusions of law. In its findings and conclusions, the district court agreed with BellSouth that the company did not owe the City additional compensation pursuant to any of the existing agreements between the parties.

First, the district court concluded that the 1879 Ordinance was valid and that *Great Southern* precluded the City from imposing new or more onerous consideration for the franchise rights granted therein. The court also rejected the City's argument that the 1879 Ordinance only granted the company a franchise to use the City rights-of-way aboveground. The court similarly rejected the City's argument that the 1906 Agreement actually granted BellSouth a franchise right to use the City's belowground rights-of way.

No. 11-30607
consolidated with
No. 11-31058

Second, the district court concluded that the 1984 Concession Agreement was valid and that it monetized BellSouth's obligations under the 1879 Ordinance and the 1916 Letter Agreement.

Third, the district court concluded that the OGA did not regulate the compensation owed by BellSouth to the City for its franchise rights under the 1879 Ordinance. The court found that BellSouth's 1879 franchise rights preexisted the OGA, did not acknowledge susceptibility to the OGA, and had not been renewed since the passage of the OGA. Similarly, because the district court concluded that the 1906 Agreement did not grant any franchise right to BellSouth, it determined that the OGA did not apply to whatever benefit the company received from the 1906 Agreement.

However, the district court disagreed with BellSouth's interpretation of the parties' contracts in two important respects. First, the court determined that BellSouth entered into the 1906 Agreement in exchange "for some benefit other than exclusivity." It based that conclusion on (1) the City's refusal to provide BellSouth with exclusivity in 1906, (2) BellSouth's decision to continue making the payments even after competition entered the telecommunications market, and (3) the fact that BellSouth did not raise an exclusivity claim regarding the 1906 payments until it brought a counter-claim in the 2000 litigation. The district court further concluded that the 1906 Agreement granted BellSouth a benefit in addition to and separate from its 1879 franchise rights. However, the court acknowledged that it could not identify the exact benefit that BellSouth did receive from the 1906 Agreement.

Second, the district court rejected BellSouth's contention that the "further consideration" provisions of the 2001 Settlement Agreement—Simplified Tax Legislation and the LMA—were exclusive. Specifically, the court concluded that the inclusion of the two "further consideration" provisions in the 2001

11

No. 11-30607
consolidated with
No. 11-31058

Settlement Agreement "indicated that the parties contemplated compensation would be paid by BellSouth to the City post-2006 in addition to BellSouth's payments to the City pursuant to the 1984 Concession Agreement." The court related this conclusion to its prior determination that the 1906 Agreement conferred an unknown benefit to BellSouth: that is, the court concluded that the parties intended the "further consideration" as compensation for the unknown benefit BellSouth would continue to receive from the 1906 Agreement. It concluded that the failure to enact either of the enumerated "further consideration" conditions did not "foreclose the City from receiving compensation from BellSouth post-2006 for the benefits BellSouth has enjoyed and continues to enjoy which were granted originally in the 1906 Agreement." However, the court determined that no valid agreement governed the amount of compensation BellSouth owed to the City post-2006 for the benefits it was continuing to receive from the 1906 Agreement.

Because the court determined that "no agreed upon method of payment has been in place from 2006," it concluded that "the doctrine of unjust enrichment must be used to define the extent of BellSouth's obligation to pay the City for the benefits it has been receiving post-2006 which originally derived from the 1906 Agreement and later were recognized in the 2001 Settlement Agreement." In particular, the court concluded that the equities of the situation merited an award of unjust enrichment damages under Louisiana law; the court concluded that BellSouth had no justification for failing to "compensate the City post-2006 since the parties contemplated that payments would continue after 2006 and BellSouth has continued to enjoy the same benefits post-2006 as when it was previously making payments to the City pursuant to the 1906 Agreement and the 2001 Settlement Agreement."

12

No. 11-30607
consolidated with
No. 11-31058

The district court eventually decided to use the amount BellSouth would have paid if the City had decided to enact the LMA, minus a credit to BellSouth for discounts it gives to the City on services, as a basis for calculating the unjust enrichment damages. Following this formula, the district court entered judgment in favor of the City in the amount of $1,549,240.93 to compensate the City for the company's use of its rights-of-way from the end of 2006 to the time of judgment. Both parties timely filed notices of appeal.

The district court's pre-judgment orders indicated that BellSouth should make "similar payments for subsequent years, unless the rights and obligations of the parties change so as to no longer require such payments." A month after the court's judgment was entered, the City passed the 2011 Ordinance in order to set the compensation BellSouth would have to pay the City in future years for the benefits it would receive "in excess of such benefits received by said company pursuant to [the 1879 Ordinance]." New Orleans, La., Ordinance 24,547 (July 7, 2011). As the district court described the 2011 Ordinance, it is "an effort to legislate future unjust enrichment payments" by requiring "BellSouth to pay five-percent of its gross revenues 'derived from its business in [the City].'"

BellSouth filed a motion seeking a preliminary injunction to enjoin the enforcement of the 2011 Ordinance, contending *inter alia*, that it violates *Great Southern* and the district court's earlier rulings. The district court denied BellSouth's request for a preliminary injunction, primarily concluding that the 2011 Ordinance properly "carve[d] out *Great Southern*" by expressly stating that the City was seeking compensation for benefits "in excess" of those granted by the 1879 Ordinance. Thus, the district court concluded that enjoining the 2011 Ordinance would effectively overturn its 2009 judgment awarding unjust enrichment damages. BellSouth appealed, and we consolidated the parties' various appeals.

13

No. 11-30607
consolidated with
No. 11-31058

**II**

On appeal, the City makes two primary claims.  First, it contends that the district court erred when it construed the scope of the rights granted to BellSouth by the 1879 Ordinance.  Second, it claims that even if the district court properly interpreted the scope of the company's 1879 franchise rights, the court erred by concluding that the OGA does not govern the compensation owed to the City under that franchise.[4]

In its appeal, BellSouth primarily asserts that the district court erred by awarding the City unjust enrichment damages.  The company also appeals the district court's order denying its request for a preliminary injunction.

On appeal from a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo.  *Preston Exploration Co., L.P. v. GSF, L.L.C.*, 669 F.3d 518, 522 (5th Cir. 2012).  Because the district court exercised diversity jurisdiction over this dispute, we apply the substantive law of Louisiana.  *Id.*

Our resolution of the parties' claims turns on the interpretation of ordinances passed by the City and the various contracts between the parties.  Under Louisiana law, "[t]he statutory and jurisprudential rules for the construction and interpretation of state statutes are applicable to the construction and interpretation of municipal and parochial ordinances." *Bunch v. Town of St. Francisville*, 446 So. 2d 1357, 1360 (La. App. 1 Cir. 1984) (citing *Lieber v. Rust*, 388 So. 2d 836 (La. App. 2d Cir. 1980), *affirmed*, 398 So. 2d 519 (La. 1981); *Louisiana Television Broadcasting Corp. v. Total C.A.T.V.*, 341 So. 2d 1183 (La. App. 1st Cir. 1976), *writ refused*, 343 So. 2d 1076 (La. 1977)).

---

[4] The City alternatively argues that the district court erred in setting the amount of the unjust enrichment award.  Because we conclude that the district court erred by awarding unjust enrichment damages, we need not address this claim.

14

No. 11-30607
consolidated with
No. 11-31058

Accordingly, determining the meaning of the City's ordinances poses questions of law. *Thibodeaux v. Donnell*, 9 So. 3d 120, 122 (La. 2009) ("Because this matter involves the interpretation of a statute, it is a question of law . . . .") (citation omitted).

Similarly, because we determine that the various contracts between the parties can be construed within their four corners, the "interpretation of the contract[s] presents [] question[s] of law." *Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012) (applying Louisiana law); *see* LA. CIV. CODE ANN. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007) ("The determination of whether a contract is clear or ambiguous is a question of law."). Thus, we will review the district court's conclusions de novo.

## A

We first consider the City's claim that the district court erred by concluding that BellSouth does not owe it compensation under any existing agreement or ordinance, apart from BellSouth's obligations under the 1984 Concession Agreement.

The City first contends that the district court misinterpreted the language of the 1879 Ordinance and improperly expanded the Louisiana Supreme Court's holding in *Great Southern* when it concluded that the 1879 Ordinance granted certain rights to the company. Specifically, the City claims that the *Great Southern* court only held that the 1879 Ordinance prevented the City from unilaterally demanding additional consideration from BellSouth for the company's existing uses of the City's rights-of-way. It contends that neither the language of the 1879 Ordinance nor the court's holding in *Great Southern* limits

15

No. 11-30607
consolidated with
No. 11-31058

its ability to demand additional consideration from BellSouth for the company's future uses of its rights-of-way. The City also asserts that the 1879 Ordinance did not grant the company the right to use its belowground rights-of-way. We reject both of the City's interpretations of the 1879 Ordinance.

First, we conclude that the 1879 Ordinance prevents the City from unilaterally increasing the consideration owed to it by BellSouth for both present *and* future uses of its rights-of-way. In *Great Southern*, the Louisiana Supreme Court invalidated an 1883 Ordinance, in which the City had attempted to require BellSouth to pay "*$5 per annum per pole for every*" pole "erected or *at present in use*" in a part of the City. 3 So. at 534. The 1883 Ordinance plainly attempted to impose additional consideration on BellSouth for both its existing and future uses of the City's rights-of-way. *See id.* ("No poles shall be allowed to be erected, . . . *except on the payment of $5 per annum per pole for every such pole* erected . . . .") (citation omitted). Accordingly, because the *Great Southern* court struck down the 1883 Ordinance in its entirety, we agree with the district court that the holding in *Great Southern* prevents the City from unilaterally increasing the consideration required by the 1879 Ordinance for both present and future uses of the City's rights-of-way.

We also conclude that the 1879 Ordinance granted BellSouth a franchise right to use the City's rights-of-way both above and below the surface. The City contends that the 1879 Ordinance only concerned its aboveground rights-of-way, and that it was the 1906 Agreement that gave BellSouth a franchise to use the City's sub-surface rights-of-way. However, the City's argument is not supported by the text of either the 1879 Ordinance or the 1906 Agreement.

The 1879 Ordinance "authoriz[es] the construction and maintenance of a telephonic telegraph line through the streets of the [C]ity." Although the 1879 Ordinance does indicate that the parties contemplated the placement of

16

BellSouth's lines aboveground, nothing in the 1879 Ordinance precludes the City from ordering the company to place its lines underground. For instance, section 2 of the 1879 Ordinance requires BellSouth to install and maintain its lines "in all other particulars, as the [City] may direct." The *Great Southern* court interpreted section 2 to recognize the right of the company to act in accord with the 1879 Ordinance, "only subjecting such 'acts and doings' to municipal regulations not conflicting with the ordinance itself." 3 So. at 535–36. Because a municipal regulation requiring BellSouth to place its lines underground would not conflict with the 1879 Ordinance itself, we reject the City's argument that the 1879 Ordinance did not grant the company a franchise to use the City's belowground rights-of-way.

The subsequent conduct of the parties confirms our reading of the 1879 Ordinance. In 1897, the City passed an ordinance requiring all companies operating with electrical wires or conductors to install facilities below ground in certain portions of the City. New Orleans, La., Ordinance 13,838 (Dec. 15, 1897). The next year, the City passed an ordinance purporting to temporarily regulate "the erection of poles and the stringing of wires overhead," pursuant to existing ordinances, "pending the laying of wires and electrical conductors underground"; moreover, this ordinance expressly applied to "telegraph, telephone, and signalling wires." New Orleans, La., Ordinance 13,970 (Feb. 2, 1898). This post-formation conduct affirms our conclusion that the 1879 Ordinance granted BellSouth a franchise to use the City's belowground rights-of-way.

Similarly, we conclude that the 1879 Ordinance included the right to use the City's belowground rights-of-way because we reject the City's argument that it was the 1906 Agreement that granted the company a franchise to place its lines underground. As we will subsequently discuss, BellSouth entered into the 1906 Agreement in exchange for the exclusive right to operate a telephone

No. 11-30607
consolidated with
No. 11-31058

business in the City. Indeed, the City is precluded from arguing otherwise because it expressly acknowledged in the 2001 Settlement Agreement that the 1906 Agreement had terminated when the company was no longer the only telephone company operating in the City. *See* 2001 Settlement Agreement ("BellSouth and the City expressly recognize that because other persons or companies have acquired the right to conduct a telephone exchange or business in the City, the 1906 Agreement has terminated."). Under Louisiana law, "[a] compromise settles only those differences that the parties clearly intend to settle, including the necessary consequences of what they express." LA. CIV. CODE ANN. art. 3076. Here, the parties' "compromise," which was embodied in the 2001 Settlement Agreement, "clearly comprehended" any "dispute" over the purpose of the 1906 Agreement; accordingly, the City is precluded from arguing that the 1906 Agreement conferred any benefit on BellSouth other than exclusivity. *See Brown v. Drillers, Inc.*, 630 So. 2d 741, 748–50 (La. 1994) (describing the inapplicable circumstances in which Louisiana courts do not enforce the clear and explicit words of a settlement agreement). Lastly, neither BellSouth's 1906 tender nor the City's motion accepting that tender mentions belowground franchise rights.

Accordingly, we conclude that the 1879 Ordinance granted BellSouth a franchise to place its lines both above and below the ground.

The City also argues that the district court erred by concluding that the OGA does not govern the compensation owed by BellSouth for its use of the City's rights-of-way. It contends that the OGA regulates the compensation BellSouth must pay to the City for the company's (1) franchise rights under the 1879 Ordinance and (2) "its franchise rights for those rights and benefits it utilizes beyond those granted under the 1879 Ordinance." We disagree.

18

No. 11-30607
consolidated with
No. 11-31058

First, we need not decide whether the City intended for the OGA to regulate the compensation owed by BellSouth under the 1879 Ordinance because the City lacks the authority to unilaterally increase the consideration due for BellSouth's rights under the Ordinance. The OGA applies to pre-existing franchises "for the purposes of determining compensation payable to the City . . . , which acknowledge susceptibility to an Ordinance of General Application or Ordinance of General Applicability." Section 2 of the 1879 Ordinance does provide that "all the acts and doings of said company under this ordinance shall be subject to any ordinance or ordinances that may hereafter be passed by the city council concerning same." However, in *Great Southern*, the Louisiana Supreme Court interpreted section 2 of the 1879 Ordinance (1) to "assume[] that the ordinance itself is to continue in full force and effect, and certainly reserves no power to repeal, destroy, or alter it in any of its essential features and considerations" and (2) to "recognize[] the right of the company to act and to do under and according to the ordinance, only subjecting such 'acts and doings' to municipal regulations not conflicting with the ordinance itself." 3 So. at 535–36. Accordingly, even if the City intended for the compensation provisions of the OGA to apply to the 1879 Ordinance, the OGA would then violate the terms of 1879 Ordinance as interpreted in *Great Southern*. That is, the OGA would conflict with the 1879 Ordinance by attempting to unilaterally increase the consideration owed by BellSouth for its franchise rights. *See id.* at 535 ("[T]he city is powerless to set [the grant of authority to BellSouth in the 1879 Ordinance] aside or to interpolate new or more onerous consideration therein.").

Second, we reject the City's argument that the OGA regulates the compensation owed by BellSouth for the franchise rights "it utilizes beyond those granted under the 1879 Ordinance." In short, the City has failed to establish that BellSouth enjoys any franchise rights beyond those granted to it by the

19

1879 Ordinance.   As we previously concluded, the 1879 Ordinance gave BellSouth the right to use the City's rights-of way both above and belowground, and, as we will discuss more fully below, the 1906 Agreement did not give the company any additional franchise rights.   Thus, the City has not established that BellSouth possesses any franchise rights other than those granted by the 1879 Ordinance.

Accordingly, we agree with the district court that the City is not entitled to any additional compensation under any ordinance or the existing contracts between the parties.

**B**

We next consider BellSouth's claim that the district court erred by awarding the City unjust enrichment damages.   BellSouth contends that the court's unjust enrichment award rests on two erroneous premises.   First, it asserts that the district court erroneously concluded that BellSouth began making payments under the 1906 Agreement in exchange for some "indeterminate benefit" in addition to and separate from the franchise rights that it received from the 1879 Ordinance.   Second, BellSouth claims the district court erred by concluding that the "further consideration" provisions of the 2001 Settlement Agreement were not the exclusive methods for BellSouth to compensate the City post-2006 for the "indeterminate benefits" it originally received in the 1906 Agreement.

Under Louisiana law, unjust enrichment has five elements:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, *i.e.*, the action is subsidiary or corrective in nature.

No. 11-30607
consolidated with
No. 11-31058

*Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 346 (5th Cir. 2009) (quoting *Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422, 432 (La. 1968)). As we have previously noted when discussing unjust enrichment under Louisiana law:

> Not every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee.

*SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992) (quoting *Carter v. Flanagan*, 455 So.2d 689, 692 (La. App. 2d Cir. 1984)).

Here, we agree with BellSouth that any enrichment it has received post-2006 from its use of the City's rights-of-way does not warrant equitable relief because there is "justification in . . . contract." *Id.* (citation omitted). Specifically, we hold that the district court's unjust enrichment award rests on two erroneous premises: (1) the 1906 Agreement gave BellSouth an unknown benefit and (2) the parties intended for BellSouth to continue to pay for its unknown benefits under the 1906 Agreement even if neither of the "further consideration" conditions had been satisfied.

First, the 1906 Agreement did not grant the company some "indeterminate right" other than exclusivity. For one, the district court's holding to the contrary runs counter to the plain text of the documents creating the 1906 Agreement. In its letter offering to tender 3% of its local telephone rental proceeds to the City, BellSouth clearly indicated that it would make the payments in exchange for exclusivity. The letter explicitly stated that the company was already "in the enjoyment of a grant, made in 1879, which gave it for legal consideration the right to conduct its business and make use of the streets, and cannot therefore

21

make any payment or contribution to the City as a consideration for a grant already required." However, in recognition of the great benefit the grant had bestowed upon it, BellSouth stated that it was "willing to pay" the City 3% "of its gross receipts from" local telephone rentals "so long as [BellSouth] is alone operating in the city." The company then further clarified the qualification to its offer: "Should any other person or company acquire the right to conduct a telephone exchange or business in the City, the Company would not feel justified in continuing its payments, and would cease to make them." Under a plain reading of the 1906 tender letter, BellSouth (1) premised its payments on being the exclusive operator in the City and (2) acknowledged that it could not make additional payments under the 1879 grant.

The City's acceptance of BellSouth's tender did not alter the benefit for which BellSouth began making payments. To be sure, the City's acceptance reserved the right to allow competition from other telephone companies in the future. Specifically, when the City Council accepted BellSouth's tender of 3% of its gross receipts for local telephone rentals, it did so "with the reservation that said tender . . . and the acceptance of said 3% . . . shall in nowise constitute a contract between [BellSouth] and the City . . . or bind the City . . . to hereafter grant no other privileges for the use of streets in connection with the telephone business." However, the City's reservation of its ability to introduce competition in the future did not somehow mean, as the district court found, that "the payments made by BellSouth to the City pursuant to the 1906 Agreement constituted compensation for some benefit other than exclusivity."

Nor does the fact that BellSouth continued to make payments under the 1906 Agreement once competition entered the City change the material terms of the parties' contract, especially given the language of the 2001 Settlement Agreement. In the Settlement Agreement the City expressly recognized that

No. 11-30607
consolidated with
No. 11-31058

BellSouth's tender under the 1906 Agreement was in exchange for the exclusive right to operate a telephone business in the City. Accordingly, the City is now precluded from arguing that the 1906 Agreement granted the company any rights other than exclusivity. *See* LA. CIV. CODE art. 3076; *Brown*, 630 So. 2d at 748–50.

Similarly, we conclude that the second premise behind the district court's unjust enrichment award was erroneous. Namely, the district court erred by determining that the "further consideration" provisions of the 2001 Settlement Agreement were not the exclusive methods for BellSouth to compensate the City after 2006—other than BellSouth's obligation to pay the City $376,886.52 annually under the 1984 Concession Agreement.

As part of the Settlement Agreement, BellSouth agreed to pay the City a fixed annual amount of $5.5 million for six years, terminating in 2006. The Agreement included two additional sections wherein the parties agreed to "further consideration for the settlement embodied in this Agreement." That is, (1) the Mayor agreed to publicly support state Simplified Tax Legislation; and (2) if Louisiana did not pass that legislation prior to January 2007, the parties agreed that the City could elect, by ordinance "during the calendar year 2007," to enter into a LMA.

The district court interpreted the "further consideration" provisions of the 2001 Settlement Agreement to establish that the parties intended for BellSouth to continue making payments to the City after 2006, in addition to its payments under the 1984 Concession Agreement. Although the court acknowledged that the conditions triggering the "further consideration" provisions of the Settlement Agreement had not been satisfied, the court concluded that the parties did not intend for the "further consideration" provisions to be the "exclusive methods of compensation post-2006." The court primarily based this conclusion on its prior

23

erroneous finding that the 1906 Agreement granted some benefit to BellSouth other than exclusivity and separate from its franchise rights under the 1879 Ordinance. Specifically, the court concluded that the failure of the "further consideration" provisions to be satisfied did "not foreclose the City from receiving compensation from BellSouth post-2006 for the benefits BellSouth has enjoyed and continued to enjoy which were granted originally in the 1906 Agreement."

However, as we have already held, exclusivity was the only benefit BellSouth received from the 1906 Agreement. Thus, the district court erred by concluding that the parties intended for BellSouth to continue paying the City after 2006 for the benefits it would continue to receive under the 1906 Agreement. The parties expressly agreed in the 2001 Settlement Agreement that the 1906 Agreement had terminated when BellSouth had lost the exclusive right to operate a telephone company in the City. Accordingly, the court's interpretation of the "further consideration" provisions runs directly counter to the Agreement's plain terms.

Further, other portions of the 2001 Settlement Agreement confirm that the "further consideration" provisions were intended to be exclusive. For instance, the Agreement provided that the "further consideration [was] for the settlement embodied in this Agreement." Thus, the "further consideration" was intended to be consideration for concessions made in the Settlement Agreement itself, not as compensation for "indeterminate" franchise rights. Moreover, because BellSouth made the six annual payments required by the Agreement, the City released and discharged BellSouth "from all claims, actions, causes of action, and disputes whether known or unknown, asserted or unasserted, that in any way concern the 1879 Ordinance, the 1906 Agreement, or the Concession Agreement." Given the broad scope of this release, the parties clearly intended to settle all of their disputes regarding the compensation owed by BellSouth for

24

No. 11-30607
consolidated with
No. 11-31058

its use of the City's rights-of-way. Accordingly, if the parties intended to allow the City to pursue additional compensation post-2006 in the event that the "further consideration" provisions had not been triggered, then the parties needed to expressly declare that intent since it runs counter to the plain language of the "release" and "intent" provisions of the Agreement.

Thus, we conclude that the "further consideration" provisions of the Agreement were the exclusive method under which the City could receive compensation from BellSouth post-2006 for the use of its rights-of-way—other than under the 1984 Concession Agreement.

Because we have rejected the two premises supporting the district court's unjust enrichment award, we also reject the district court's conclusion that "since no agreed upon method of payment has been in place from 2006," it must award unjust enrichment damages "to define the extent of BellSouth's obligation to pay the City for the benefits it has been receiving post-2006 which originally derived from the 1906 Agreement and later were recognized in the 2001 Settlement Agreement."

Contrary to the district court's conclusion, we determine that BellSouth has "justification in . . . contract" for any enrichment it may be enjoying from its use of the City's rights-of-way. *SMP Sales*, 960 F.2d at 560 (citations omitted). Put another way, any enrichment BellSouth is receiving from its use of the City's rights-of-way is not unjust because "it is the result of, or finds its explanation in, the term of a valid juridical act between the impoverishee and the enrichee." *Id.* (citation omitted). Here, the City released its claims for additional compensation from BellSouth in exchange for substantial consideration under the terms of the Settlement Agreement. Thus, the Settlement Agreement justifies whatever "impoverishment" that has been suffered by the City. *Id.*

25

No. 11-30607
consolidated with
No. 11-31058

Accordingly, we reverse and vacate the district court's judgment awarding the City unjust enrichment damages.

**C**

BellSouth has also appealed the district court's order denying its request for a preliminary injunction to enjoin the enforcement of the 2011 Ordinance pending appeal. The 2011 Ordinance attempts to legislate future unjust enrichment damages by setting the compensation BellSouth must pay the City in future years for the benefits it receives "in excess of such benefits received by said company pursuant to [the 1879 Ordinance]."

However, as we have already held, the district court's unjust enrichment award was based on an erroneous assumption that BellSouth received some "indeterminate benefit" from the 1906 Agreement apart from exclusivity and the franchise rights granted in the 1879 Ordinance. Thus, the 2011 Ordinance merely seeks to increase the consideration BellSouth owes to the City for the rights granted to it under the 1879 Ordinance. Accordingly, the 2011 Ordinance violates the *Great Southern* court's holding that "the city is powerless to set [the grant of authority to BellSouth] aside or to interpolate new or more onerous considerations therein." 3 So. at 535.

Given our conclusion that the district court erred by awarding unjust enrichment damages, the City necessarily lacks the authority to enforce the 2011 Ordinance, which attempts to codify those unjust enrichment damages. Accordingly, we need not address BellSouth's motion for a preliminary injunction because we remand to the district court with instructions to permanently enjoin the City from enforcing the 2011 Ordinance.

**D**

The City alternatively asks the panel to certify a question to the Louisiana Supreme Court concerning the proper interpretation and scope of the court's

No. 11-30607
consolidated with
No. 11-31058

holding in *Great Southern*. Louisiana Supreme Court Rule 12 provides that the circuit may certify questions of law to the state court "when it appears" to the circuit that (a) questions of Louisiana law are determinative of the case and (b) "there are no controlling precedents in the decisions" of the Louisiana Supreme Court on the question.

Because *Great Southern* "appears" to be a "controlling precedent" of the Louisiana Supreme Court on the determinative questions presented by the City's appeal, this case does not seem to be eligible for certification. However, the City does contend that the 1879 Ordinance violates a provision of Louisiana's 1974 Constitution, an argument which could not have been raised when the court decided *Great Southern*.[5]

Regardless, we decline to certify any question to the Louisiana Supreme Court because the City recognized the validity of the *Great Southern* decision in the 2001 Settlement Agreement. In the agreement, the City

> expressly recognize[d] the grant of rights conferred to BellSouth by the 1879 Ordinance, as interpreted and confirmed by the *Great Southern* court. Specifically and without limitation, the City recognizes, as the *Great Southern* Court held, that the City is not entitled to seek additional compensation or consideration from BellSouth for the rights conferred by the 1879 Ordinance.

Given this acknowledgment of the continuing force of *Great Southern*, we conclude that the City is precluded from arguing that *Great Southern* improperly limits the consideration it can demand for the rights granted to BellSouth by the 1879 Ordinance. *See* LA. CIV. CODE ANN. art. 3076; *Brown*, 630 So. 2d at 748–50.

---

[5] BellSouth has not claimed that the City could have made a similar argument under a provision of the Louisiana Constitution of 1879. Accordingly, we will assume that the 1879 Constitution did not contain a similar provision.

No. 11-30607
consolidated with
No. 11-31058

### III

For the foregoing reasons, we AFFIRM the district court's order denying the City's claims for damages under the contracts between the parties. We REVERSE and VACATE the district court's judgment awarding unjust enrichment damages to the City. We also REMAND to the district court with instructions to enter a permanent injunction, enjoining the City from enforcing the 2011 Ordinance.