GAIDRY, J.
|3This is an appeal of a bench trial verdict rendered by the 22nd Judicial District Court in favor of the Appellee, USA Disaster Recovery, Inc. (“USA”) and against the Appellant, St. Tammany Parish Government (“the Parish”) in the amount of $37,500.00 with interest. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY
This litigation originates with Hurricane Katrina making landfall over St. Tammany Parish on August 29, 2005. At the time, the Parish had certain protocols in place for states of emergency outlined in the St. Tammany Parish Multi-Hazard Emergency Operation Plan. The plan called for the St. Tammany Parish Sheriffs Office (“the Sheriff’) to assume specific duties, one of which being search and rescue. To accomplish this task, it was necessary for the Sheriff to clear large amounts of debris from the roads so that homes and other buildings where people might have been trapped were accessible. However, the plan made it the duty of the Parish to clear the roads.
The Sheriff appointed Major Donald Sharp as incident commander for eastern St. Tammany, and a command post was established near Oak Harbor in southeastern St. Tammany, where most of the devastation to St. Tammany occurred. While the Parish was tasked with clearing debris from the roads, it lacked the resources to perform its duties adequately. The Parish *427 therefore contracted with private entities to assist in the clearing of debris from the roads in accordance with guidelines set by the Federal Emergency Management Agency (“FEMA”).
[¿Meanwhile, in order to accomplish search and rescue, Maj. Sharp undertook the clearing of roads independently from the Parish, as it was necessary to reach any and all hurricane victims who needed to be extracted from the affected areas as quickly as possible. As this was being done, Maj. Sharp was approached by Carl Hodge, Jr. and Sean Bentson, who volunteered their equipment and manpower in assisting the Sheriff to clear debris from the roadways. Mr. Hodge and Mr. Bent-son had formed a joint venture which they later formed into USA, a Louisiana corporation. The record indicates that the Sheriff advised Mr. Hodge that they would be unable to pay for the services he and Mr. Bentson were providing, but Mr. Hodge allegedly replied that he knew the parish president and was confident the Parish would pay him for the services.
Hodge and Bentson eventually submitted invoices to the Sheriff and the Parish for the work they performed. Neither the Sheriff nor the Parish paid these invoices. After USA was formed on or about September 13, 2005, Hodge and Bentson assigned their claims against the Sheriff and the Parish to USA. USA then brought this suit for open account against the Parish and the Sheriff, seeking $77,397.00, which USA claimed was the value of the services they rendered to the Sheriff and the Parish. USA claimed breach of contract, and in the alternative, USA claimed unjust enrichment for the Sheriff and the Parish. The Parish filed a cross-claim against the Sheriff in the event the Parish was held liable for USA’s demand.
The matter went to trial on two separate days, the first being August 25, 2011, and the second being September 22, 2011. At trial, it was established by the Parish that FEMA requires contractors to contract with the Parish to qualify for payment for debris removal. The Parish established that neither Mr. Hodge, Mr. Bentson, nor USA ever contracted with the Parish Indirectly or followed any of the application guidelines put forth by the Parish or FEMA to qualify for payment. The Parish averred that at no time was it even aware that USA or its representatives were present in St. Tammany clearing debris after the hurricane passed. The Sheriff established at trial that it never promised USA or its representatives any payment, and the record establishes that the Sheriff did not give Hodge or Bentson the assurance that the Parish would pay for the work they had done. The court found there was insufficient evidence to prove that an open account or a contract existed between USA and the Parish or USA and the Sheriff.
However, the court did find that under the theory of unjust enrichment, USA was impoverished to the benefit of the Parish, since the St. Tammany Multi-Hazard Emergency Operation Plan made it the Parish’s obligation to clear the debris from the roads. While the Sheriff did clear debris on its own, it was not required to do so by the plan. The Parish claimed that since USA impoverished itself at its own risk and had not contracted with the Parish directly, the theory of unjust enrichment was inapplicable. The court cited for support of its ruling City of New Orleans v. BellSouth Telecommunications, Inc., 2011 WL 2293134 (E.D.La.2011),[1] which *428 states that impoverishment due to the plaintiffs own actions taken at his own risk is not an exception to unjust enrichment.
In determining the damages, the court looked to La. Civil Code Art. 2298, which states the amount of compensation due for unjust enrichment is the lesser of either the amount of enrichment or the amount of impoverishment. The court admitted that the evidence of damages provided by USA was vague and did not sufficiently prove the assignment of rights to the claim to USA, and the relationship between Mr. Hodge and USA was Rnever fully explained. Mr. Hodge’s testimony of the work he performed was not specific, and most of his records of the work were lost. The work could not be verified outside of Mr. Hodge’s own testimony, yet the court acknowledged that Mr. Hodge and his work team did perform some valuable services for the Parish. Thus the court awarded USA damages in the amount of $37,500 against the Parish. The Parish appealed the court’s judgment on January 11, 2012.
ASSIGNMENTS OF ERROR
The assignments of error as given by the Parish are as follows:
The trial court erred in the application of the law of unjust enrichment when it declined to follow Louisiana law, including compelling precedent of the First Circuit case Charrier v. Bell, 496 So.2d 601 (La.App. 1 Cir.1986). Instead, the court was persuaded to follow the City of New Orleans case, an unpublished slip opinion from the Eastern District of Louisiana, and concluded that USA was entitled to recover on a theory of unjust enrichment despite finding that the actions of USA were undertaken at its own risk.
The trial court erred in the application of the law of unjust enrichment because the trial court identified no measure of damages and set an award with no explanation, analysis, or evidence supporting its award. The trial court failed to establish a rate of measurement for either USA’s impoverishment or the Parish’s enrichment or to compare the two and choose the lesser. Such failure does not comply with the requirements of La. C.C. art. 2298.
The trial court erred in the application of the law of unjust enrichment because it awarded damages despite USA’s claim on open account and the agreement between USA and the Sheriff. Art. 2298 expressly provides that unjust enrichment is not available when the law provides another remedy for |7the impoverishment, even if unsuccessful. USA sued the Sheriff and the Parish under open account law, yet the trial court allowed USA to recover based on unjust enrichment. There was an offer and acceptance, the requisite elements of a contract, between the Sheriff and USA.
The trial court erred in the application of the law of unjust enrichment because it concluded that the Parish was enriched by the actions of USA despite finding that the Parish was unaware of USA or any work it may have performed. Although Mr. Hodge testified that he had extensive experience working with FEMA, he failed to follow any of the Parish’s procedural requirements, including verification of work imposed for the purpose of complying with FEMA requirements. Even if USA’s proof as to what work it did was reliable, the Parish could not successfully request reimbursement because USA did not comply with the Parish’s requirements.
The trial court erred in the application of the law of unjust enrichment when it ignored the benefit the Sheriff received and concluded that the Sheriff was not enriched. The trial court’s findings of fact and conclusions of law are inconsistent in that it found there was no underlying *429 agreement between the Sheriff and USA despite finding that the Sheriff undertook the clearing of roads to conduct search and rescue; USA volunteered to assist the Sheriff; the Sheriff said it could not pay USA; and USA accepted the Sheriffs offer. The Sheriff testified that in the past, it had cleared roads for a specific cause, such as search and rescue. Such testimony contravenes the trial court’s conclusion that the Sheriff received no benefit.
The trial court’s findings of fact and conclusions of law are internally inconsistent in that it concluded that Mr. Bentson, who did not testify at trial, assigned his rights to USA notwithstanding the failure to produce such an assignment and of Mr. Bentson to testify.
IsThe trial court erred in dismissing the Sheriff from this action and from any liability to USA.
DISCUSSION
We must first decide if the trial court correctly applied the theory of unjust enrichment, as it is defined by La. C.C. art. 2298 and the prevailing jurisprudence.
The Parish is correct that the City of New Orleans case upon which the trial court based its decision is an unpublished slip opinion by the Federal Eastern District of Louisiana. What the Parish did not know and could not have known at the time it wrote its brief is that the Eastern District had its ruling overturned by the Federal Fifth Circuit Court of Appeal, where it was stated that the theory of unjust enrichment in a case originating in Louisiana must be applied according to Louisiana law. See City of New Orleans v. BellSouth Telecommunications, Inc., 11-30607, 11-31058 (C.A.5 La.7/31/12), 690 F.3d 312, 329.
The Parish cites Charrier as the guiding case for this court on the issue of whether the Parish’s enrichment at the expense of USA was unjust. There are five criteria to this claim:
(1) There must be an enrichment;
(2) There must be an impoverishment;
(3) There must be a connection between the enrichment and the impoverishment;
(4) There must be an absence of justification or cause for the enrichment and impoverishment;
(5) There must be no other remedy at law available to the plaintiff. Char-rier, at 606.
| flWhile there is dispute as to who exactly was enriched, there is no doubt that enrichment occurred. While USA benefit-ted the Sheriff by assisting in the clearing of roads to facilitate search and rescue operations, USA also benefitted the Parish by assisting it in its obligation to have the roads cleared. More importantly is the issue of the second criterion of impoverishment and whether USA impoverished itself at its own risk. Although USA may have done work at its own expense, the impoverishment element is met only when the factual circumstances show that it was not a result of the plaintiffs own fault or negligence or was not undertaken at his own risk. Id.
The record shows that USA did engage in some risky behavior. Hodges and Bentson were unsolicited when they approached the Sheriff and offered to assist in the clearing of the roads. While it seems the Sheriff accepted their offer, the acceptance was conditioned with the inability or unwillingness to compensate them for their services. That condition alone should cause a reasonable business person to wonder whether it is prudent to perform services. Instead, USA persisted by stating to the Sheriff that the Parish would pay for the work, even though USA or its *430 representatives had no previous communication or authorization from the Parish in this regard. In other words, USA truly did not have any reason to believe that the Parish would pay for the work it performed, and USA should have known that its work may in fact go without compensation. Nevertheless, USA decided to perform work without guarantee of payment. USA was acting possibly out of its own negligence, but more probably knowingly and at its own risk, especially since USA claims to be familiar with the contract guidelines created by FEMA. Id. at 607. Obviously, the intent of unjust enrichment is | ipto avoid awarding one who has helped another through his own negligence or fault or through action taken at his own risk. Id.
There is no question that there is a connection between the enrichment and the resulting impoverishment, although again the extent of the impoverishment is in question. Whether USA did only a little or a large amount of work to clear the roads of St. Tammany, the work directly beneñtted both the Sheriff and the Parish.
As to whether USA had cause or justification to impoverish itself, USA contends it had an oral agreement with Maj. Sharp that it would clear the roads; however, Maj. Sharp told Mr. Hodge he could not pay for the work. While Mr. Hodge stated he was confident that the Parish would pay him, he had no such verification from the Parish. Cause is the reason why a party obligates himself. La.C.C. art. 1967. Comment (c) of art. 1967- states that “cause” is not synonymous with “consideration,” but the reason why a party binds itself. From the record, it is apparent that USA’s cause or reason to obligate itself was payment. Mr. Hodge had a discussion with Maj. Sharp about payment, and USA subsequently invoiced both the Sheriff and the Parish for an amount that was never agreed upon by anyone. Since USA’s cause was never agreed upon, there was no “meeting of the minds” and no obligation ever existed. Even if USA had a gratuitous contract with the Sheriff or the Parish, circumstances which would otherwise give rise to a quasi-contractual obligation like unjust enrichment to pay for the services rendered, give rise merely to an imperfect obligation incapable of enforcement in a court of law. Webb v. Webb, 2001-1577, p. 7 (La.App. 1 Cir. 11/8/02), 835 So.2d 713, 719.
Finally, the Parish argued that since USA sued primarily for open account, breach of contract, and alternatively for unjust enrichment, relief launder unjust enrichment is unavailable since another legal remedy exists. The law must provide the plaintiff with another remedy in order to defeat a cause of action in unjust enrichment. See Walters v. Med-South Record Management, LLC, 2010-0351 (La.6/4/10), 38 So.3d 245, 247. A remedy at law or an applicable rule of law vitiates the utilization of an action based on unjust enrichment. Webb at 718. It is not the success or failure of other causes of action, but rather the existence of other causes of action, that determines whether unjust enrichment can be applied. Garber v. Badon & Ranier, 2007-1497, p. 10-11 (La.App. 3 Cir. 4/2/08), 981 So.2d 92, 100, writ denied 2008-1154 (La.9/19/08), 992 So.2d 943. USA sued on open account and presented as prima facie proof an affidavit of correctness to the court, pursuant to La.C.C.P. art. 1702 B(3). Although USA subsequently failed to prove the indebtedness, by making a prima facie case it availed itself of the legal remedy of open account. Therefore, unjust enrichment could not have been pled in the alternative.
*431 CONCLUSION
Unjust enrichment is not available to USA for the second, fourth, and fifth criteria listed in Charrier. Specifically, USA impoverished itself at its own risk, had no cause to obligate itself, and had another remedy at law available to it before unjust enrichment. The trial court was incorrect to award damages to USA under unjust enrichment, but was correct to deny damages under open account. The result is that USA cannot recover damages under these legal theories, and the Parish’s assignments of error regarding damages need not be discussed. USA’s suit is dismissed with prejudice.
| ^DECREE
The judgment of the trial court is reversed and vacated. The award of damages to the Appellee, USA Disaster Recovery, Inc., in the amount of $37,500.00, is also vacated. The instant lawsuit is dismissed with prejudice, and all costs of this appeal are assessed to the Appellee, USA Disaster Recovery, Inc.
REVERSED.
CARTER, C.J., concurs with reason.
GUIDRY, J., concurs.

. Reversed and vacated by City of New Orleans v. BellSouth Telecommunications, Inc., 11-30607 (C.A.5 La.7/31/12), 690 F.3d 312.