## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-348

CONN-BARR, LLC

VERSUS

DIANA ISTRE FRANCIS

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2011-162
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Cooks, J., dissents and assigns written reasons.

J. Michael Veron
Veron, Bice, Palermo & Wilson, LLC
Post Office Box 2125
Lake Charles, LA   70602-2125
(337) 310-1600
COUNSEL FOR DEFENDANT/APPELLEE:
     Diana Istre Francis

Kevin P. Fontenot
Scofield, Gerard, Pohorelsky, Gallaugher & Landry LLC
Post Office Drawer 3028
Lake Charles, LA   70602
(337) 433-9436
COUNSEL FOR PLAINTIFF/APPELLANT:
     Conn-Barr, LLC

**AMY, Judge.**

The plaintiff filed suit, seeking a finder's fee associated with the sale of the defendant's business. In rejecting the plaintiff's claim, the defendant argued that the terms of the finder's fee agreement entered into between the parties were not satisfied by the transaction that ultimately resulted. The trial court granted summary judgment in favor of the defendant, rejecting both the plaintiff's contractual claim and the alternative claim of enrichment without cause. The plaintiff appeals.

## Factual and Procedural Background

The record reveals that the defendant, Diana Istre Francis, and her former husband were the majority interest owners in Francis Drilling Fluids. The couple's children held the remaining shares. This suit revolves around the underlying contacts involved in the ultimate sale of Francis Drilling Fluids to NYTEX Energy Holdings, Inc. in 2010.

The plaintiff, Conn-Barr, L.L.C., alleges that, in March 2009, it was contacted by Ms. Francis's attorney for the purpose of assisting Ms. Francis in locating a potential investor in Francis Drilling Fluids. This relationship is memorialized in a written March 13, 2009 "Finder's Fee Agreement" entered into between Ms. Francis and Conn-Barr owner, James Ingram.

According to his deposition testimony, Mr. Ingram learned of NYTEX as a potential buyer after consulting with associate Henry Schlesinger. Thereafter, and according to Conn-Barr's petition, Conn-Barr introduced NYTEX representative Michael Galvez to both Ms. Francis and her attorneys. The record substantiates that negotiations with NYTEX proceeded into 2010.

In 2010, NYTEX purchased not only Ms. Francis's interest, but Francis Drilling Fluids in its entirety. According to Ms. Francis, the sale was made possible due to Mr. Schlesinger's introduction of NYTEX to her. She notes a March 10, 2009

"Non-Circumvention Agreement" entered into between NYTEX and Mr. Schlesinger. She denies that NYTEX was introduced to her as a potential buyer by Conn-Barr, i.e., Mr. Ingram.

Conn-Barr ultimately demanded a finder's fee under the terms of the Finder's Fee Agreement, which was refused by Ms. Francis. This suit resulted, with Conn-Barr seeking contractual recovery under the agreement or, alternatively, recovery for unjust enrichment under La.Civ.Code art. 2298.

Conn-Barr and Ms. Francis filed motions for summary judgment, supporting their respective positions with affidavits, deposition testimony of the central figures, and the pertinent contracts. Following a hearing, the trial court denied the motion for summary judgment filed by Conn-Barr and granted that filed by Ms. Francis, dismissing Conn-Barr's petition.

Conn-Barr appeals, asserting in its brief that:

1. The district court committed legal error in determining that, under the facts presented, Conn-Barr, L.L.C. ("Conn-Barr") is not entitled to a fee under the terms set forth in the Finder's Fee Agreement between the parties.

2. The district court committed legal error in determining that Conn-Barr's introduction of its contact, NYTEX Energy Holdings, Inc. ("NYTEX"), to Conn-Barr's client, Diana Istre Francis, did not meet the criteria of a "written introduction" as set forth in the Finder's Fee Agreement.

3. In the alternative, the district court committed legal error in determining that Diana Istre Francis did not legally waive her right to a written introduction by Conn-Barr to the contact by accepting the introduction provided and doing business with the contact provided by Conn-Barr.

4. In the alternative, the district court committed legal error in determining that Conn-Barr was not entitled to recovery pursuant to La. C.C. art. 2298 because Diana Istre Francis was enriched unjustly or without cause to the detriment of Conn-Barr.

**Discussion**

*Summary Judgment*

In considering a trial court's ruling on a motion for summary judgment, an appellate court conducts a de novo review, using the same criteria that governed the trial court's consideration of whether summary judgment is appropriate. *Sensebe v. Canal Indem. Co.*, 10-0703 (La. 1/28/11), 58 So.3d 441. Namely, the courts consider La.Code Civ.P. art. 966(B).

*Finder's Fee Agreement*

Conn-Barr first re-lodges its contractual claim, asserting that the content of the 2009 Finder's Fee Agreement required the trial court to grant its motion for summary judgment and deny that of Ms. Francis. It specifically disputes Ms. Francis's contention that recovery under the Agreement was dependent upon the undertaking of a joint venture agreement. Instead, Conn-Barr argues one area of the Agreement anticipated recovery of the finder's fee if Ms. Francis fulfilled her ultimate objective of selling her interest in Francis Drilling Fluids.

Fundamental to any contractual interpretation matter is the precept that: "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. In the event that the contract's wording is "clear and explicit and lead[s] to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Further, when the words are "susceptible of different meanings [they] must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. The Civil Code instructs that: "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Finally, if a contract can be construed from its four corners without reference to extrinsic evidence, a court considers the question of

3

contractual interpretation as a question of law. *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507 (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054 (La. 5/22/07), 956 So.2d 583).

The March 13, 2009 "Finder's Fee Agreement" entered into between Ms. Francis and Conn-Barr provides:

> This agreement is a performance based contract whereby Diana Francis agrees to pay a finder's fee to Conn-Barr, L.L.C., for locating a partner to join her in acquiring control of a specific company that is owned in part by Diana Francis and in part by her former husband. Mrs. Francis, herein known as the client, agrees to pay Conn-Barr, L.L.C., herein known as the consultant, a fee that shall only be based on the specific performance points as described below.

> If and when the client formally engages the agents contact via a written joint venture agreement with the contact, a fee of Twenty Five Thousand Dollars ($25,000) is owed and due to Conn-Barr, L.L.C.

> If and when the client and the contact gain control of the company to be acquired, an additional fee of Forty Thousand Dollars ($40,000.00) is due and payable to Conn-Barr, L.L.C.

> *If and when the client sells or trades her interest in the acquired company to the contact, a fee based on the Lehman Brothers 5-4-3-2-1 formula shall be paid to Conn-Barr, L.L.C. The fee is 5% of the first million dollars received by client, 4% of the second, 3% of the third, 2% of the fourth and 1% of every million dollars thereafter received by client. The amount already paid (the $25,000 and the $40,000) shall be deducted from this balance owed under the Lehman Brothers formula.*

> If the client and the agents contact, after entering into the joint venture agreement, are unable to gain control of the company, the client shall owe a fee of 2% of her windfall above her agreed upon buyout with the agent's contact that she receives from whatever entity or person buys her out.

> In the event that no written engagement is reached with the agent's contact and client, then nothing is owed or due the agent under this agreement (this provision controls any other to the contrary).

> Agent shall have an opportunity to introduce two different contacts to client. Agent introduces a contact by identifying the contact to client or client's representatives in writing. After identifying the second contact, agent must obtain a renewal of this agreement in writing before introducing additional contacts if agent desires to be paid under this agreement.

4

> This agreement constitutes the complete understanding of the parties hereto and the law of the State of Louisiana shall control the enforcement of same.

(Emphasis added.)

Conn-Barr asserts that by operation of the Agreement's fourth paragraph, italicized above, the parties contracted for Conn-Barr's recovery of a finder's fee in the event that Ms. Francis "sells or trades her interest" in the company. Thus, according to its interpretation, the only factual issue left to resolve was whether Conn-Barr was responsible for bringing NYTEX to the negotiation table.

Although Paragraph Four addresses Ms. Francis potentially selling her interest in the company, the Agreement only contains this as one of the "performance points" on which Conn-Barr's compensation would be based. The first sentence, in fact, indicates that Ms. Francis agreed to pay a finder's fee to Conn-Barr "for locating a *partner to join her in acquiring control*" of the company. That fee was to be based on specific performance points, only one of which was Ms. Francis's selling her interest in Francis Drilling Fluids. Instead, the wording in the first sentence, along with the remainder of the contract, demonstrates that the parties contracted, in the least, for a joint venture agreement. It is undisputed that NYTEX and Ms. Francis did not enter into a written joint venture agreement for Ms. Francis's acquisition of the company.[1] Such an agreement would have evidenced the first performance point requiring compensation to Conn-Barr under the terms of the Finder's Fee Agreement.

Thereafter, remaining performance points were contingent on the parties to the joint venture 1) "gain[ing] control of the company to be acquired," 2) Ms. Francis selling or trading her interest "in the acquired company to the contact," or 3) the parties to the joint venture agreement being unable to gain control of the company. If

---

[1] The record includes an unsigned, draft joint venture agreement between Ms. Francis and NYTEX for the purpose of acquisition of the ownership of the Francises' company.

no written engagement was reached between the contact and Ms. Francis, nothing was owed under the Finder's Fee Agreement. Pursuant to La.Civ.Code art. 2050, it is clear that provisions of a contract must be interpreted in light of the other provisions such that each is given the meaning suggested by the contract in its entirety. In this case, it is clear that the contract anticipates the creation of a joint venture agreement given that its purpose is for Ms. Francis to locate a partner "to join her in acquiring control" of the company.

Given this specific introductory language regarding the intent of the contract, we find no merit in Conn-Barr's contention that Paragraph Four stands alone and does not require that the parties enter into a joint venture agreement. Rather, we note that the first phrase of that paragraph provides for compensation in the event Ms. Francis sold or traded her interest "in the *acquired* company" to the contact. (Emphasis added.) Obviously, that phrase anticipates that the joint venture had first been successful in its objective of acquiring control of the company. The subsequent paragraph then makes provision in the event the parties to the joint venture agreement did not gain control of the company. Again, no evidence exists that NYTEX and Ms. Francis entered into a joint venture agreement or that "they" ever "acquired" the company.

Further, we point out that the trial court correctly noted that the Finder's Fee Agreement contains specific requirements for the introduction of contacts to Ms. Francis insofar as it dictates that: "Agent introduces a contact by identifying the contact to client or client's representatives in writing." Based on the parties' evidence, the question of whether Conn-Barr, through Mr. Ingram, or Mr. Schlesinger introduced NYTEX to Ms. Francis and, at some point her former husband, remains in dispute. However, that point is irrelevant in the resolution of this case.

As pointed to by Conn-Barr, certain email transmissions, and deposition and affidavit testimony reflect that Mr. Ingram was at least familiar with Mr. Schlesinger, NYTEX, and the fact that these entities began negotiations with Ms. Francis. However, the extent of that involvement is unclear and an identifiable introduction of NYTEX *by Conn-Barr* as a potential business interest for Ms. Francis is not definitively reflected therein. Undoubtedly, no evidence indicates that Conn-Barr *identified* NYTEX as a contact "to client or client's representatives *in writing*." (Emphasis added.) Yet, the necessity and import of the identification being made via a memorialized writing is reflected in the further language of the Agreement which limits Conn-Barr to only two contacts. Thereafter, Conn-Barr was required to obtain a renewal of the Finder's Fee Agreement "in writing before introducing additional contacts if agent desires to be paid under this agreement."

Accordingly, we find no merit in Conn-Barr's arguments regarding the contractual claim. In light of this finding, we do not further discuss Conn-Barr's argument regarding the question of whether Mr. Ingram introduced NYTEX to Ms. Francis as, even if we were to assume that such an introduction were made, the formalties dictated by the contract were not fulfilled.

*Waiver*

Conn-Barr next argues that, to the extent the contract is found to require a writing, the trial court should have determined that Ms. Francis waived that requirement given her subsequent actions as negotiations progressed. However, further discussion of this point is pretermitted by the conclusion that the Finder's Fee Agreement required that compensation thereunder was contingent upon the completion of a joint venture agreement.

*Enrichment Without Cause*

As it did below, Conn-Barr advances an alternative claim under La.Civ.Code art. 2298 in the event that this court concludes that the contractual claim lacks merit. It argues that, given NYTEX's ultimate purchase of Francis Drilling Fluids in its entirety, Ms. Francis was obviously enriched and that this transaction was due to Conn-Barr's identification of NYTEX as a potential investor.

Louisiana Civil Code Article 2298, entitled "Enrichment without cause; compensation[,]" provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. *The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.* The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

(Emphasis added.) Conn-Barr's argument under Article 2298 necessarily fails under the definition of "without cause" as emphasized above. Although Ms. Francis was compensated by the sale of Francis Drilling Fluids, that enrichment resulted from a valid juridical act or the law, insofar as it resulted from the sale of the business. *See also Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So.2d 648. Additionally, to the extent that Conn-Barr asserts that such a sale was at its expense, it is clear that the right to remuneration for providing a contact existed only through operation of the Finder's Fee Agreement, the terms of which were not fulfilled. Thus, it is unclear on what basis Conn-Barr would assert that any compensable obligation existed.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the appellant, Conn-Barr, L.L.C.

**AFFIRMED.**

CONN-BARR, L.L.C.

VERSUS

DIANA ISTRE FRANCIS

**Cooks, Judge Dissenting.**

The inclusion of paragraph six of the contract adds weight to Plaintiff's unjust enrichment claim. That paragraph recites "In the event that no written engagement is reached with the agent's contact and client, then nothing is owed or due the agent under this agreement." It cannot be denied that a "written engagement" was reached between the "agent's contact and client." Only if no "written engagement" is reached could the client default to the proviso which states "nothing is owed or due the agent under this agreement." What happened here is a simple failure of the contract to provide a payment formula for the outright sale of the client's interest in the company to the contact by written engagement. The latter scenario does not dictate as a matter of law that we afford Plaintiff no remedy at all. What occurred in this case presents the classic facts which often give rise to the application of LA.C.C. Art. 2298, which provides a person who has been enriched without cause at the expense of another person is bound to compensate that person. The fact here is there is no "valid juridical act or the law" that sanctions the enrichment resulting in this case. The contract only contemplated "no recovery" if "no written engagement" occurred – nothing for nothing. Defendant insists she is entitled to "everything for nothing." That eventuality was not provided for in the contract or by law. That is why La.C.C.Art. 2298 provides a subsidiary remedy in such instances. This case should be remanded to the trial court for further proceedings.