# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30795

REID ZEISING,

> Plaintiff - Appellant

v.

MICHAEL A. SHELTON; SHELTON RESTAURANT GROUP, L.L.C.,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:12-CV-2614

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

KING, Circuit Judge:[*]

Defendant–Appellee Michael A. Shelton sought to purchase twenty-nine restaurants, and when he could not obtain satisfactory financing for this restaurant acquisition deal, he sought the expertise of Plaintiff–Appellant Reid Zeising. Zeising then performed financial services necessary to complete this complex transaction and assisted in negotiating more favorable financing terms for the restaurant deal. In conducting these services, Zeising believed

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30795

that he and Shelton would share ownership of the restaurants once the restaurants were purchased. However, before Shelton and Zeising completed the deal, Shelton ceased working with Zeising and later completed the deal by himself. Zeising subsequently filed the instant suit asserting, *inter alia*, an unjust enrichment claim. The district court granted summary judgment to Shelton, finding that Zeising could not show that he suffered an "impoverishment" or that Shelton's enrichment was without cause—two elements of an unjust enrichment claim required under Louisiana law. We agree that Zeising failed to establish his unjust enrichment claim and AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant–Appellee Michael A. Shelton sought to purchase twenty-nine Popeyes restaurant franchise locations in Louisiana and Texas from TMC Foods LLC ("TMC") and others. On June 15, 2011, GE Capital ("GE") offered Shelton a $22.8 million loan toward the proposed $29 million acquisition, requiring Shelton to pay the remaining $6.2 million in cash. Shelton did not find these terms acceptable and approached Plaintiff–Appellant Reid Zeising, seeking Zeising's professional expertise in securing financing for the purchase of the restaurants. Zeising and Shelton met with GE representatives from June 20 to June 21, 2011. Zeising alleged that, following their meeting with GE, he and Shelton verbally agreed to jointly pursue acquiring the twenty-nine restaurants and to form a Georgia limited liability company—Dixie Restaurant Group, LLC ("Dixie")—for that purpose. Zeising and Shelton met again on June 22, 2011, and agreed to split the ownership of Dixie 30% and 70%, respectively. Zeising alleged that he worked "essentially full time" between June and September 2011 to, *inter alia*, explore alternative sources of financing for the restaurant acquisition, negotiate the purchase agreement

2

with the sellers, negotiate better financing terms, and perform the due diligence necessary for transactions of this complexity.

On August 18, 2011, Shelton signed a $29 million asset purchase agreement with TMC on behalf of Dixie. This agreement was conditioned on Dixie completing its due diligence, obtaining financing, and finalizing a loan application with GE. On August 30, 2011, GE proposed $31.8 million in loans for the restaurant acquisition, but Shelton did not find the terms of this proposed loan acceptable. On September 13, 2011, Shelton informed Zeising that he would prefer to "go it alone" and ceased working on the restaurant acquisition deal with Zeising. On November 2, 2011, Dixie terminated the asset purchase agreement with TMC at Shelton's direction. GE later contacted Shelton to reopen negotiations on the loan proposal. In December 2011, Defendant–Appellee Shelton Restaurant Group, LLC ("SRG")—a Louisiana LLC wholly owned by Shelton—entered into a new asset purchase agreement with TMC to procure the twenty-nine restaurants with 100% of the financing obtained from GE.

Zeising subsequently filed suit against Shelton and SRG on October 2, 2012, asserting, among other claims, a claim for unjust enrichment.[1] On June 1, 2015, Shelton filed a motion for summary judgment on Zeising's claim of unjust enrichment.[2] The district court found that Zeising had failed to show two elements of an unjust enrichment claim under Louisiana law: "an 'impoverishment'" and that "any enrichment to Shelton was without

[1] Zeising's complaint did not specifically mention an unjust enrichment claim; however, the district court later interpreted his arguments and allegations as asserting an unjust enrichment claim under Louisiana law.

[2] The district court had previously granted summary judgment on all of Zeising's other claims. On appeal from judgment entered pursuant to Federal Rule of Civil Procedure 54(b), this court affirmed. *See Zeising v. Shelton*, 599 F. App'x 231, 231 (5th Cir. 2015) (per curiam) (unpublished).

No. 15-30795

'justification or cause.'" The district court therefore granted Shelton's motion for summary judgment, and Zeising timely appealed.

## II. STANDARD OF REVIEW

This court "review[s] a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). However, "[s]ummary judgment may not be thwarted by conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.*

In this case, the district court granted summary judgment to Shelton based on its interpretation and application of Louisiana law. This court reviews "a district court's determination of state law" de novo. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). In resolving issues of state law, this court is "bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000). But "[i]f no final disposition is directly on point, [this court] must make an '*Erie*-guess', predicting how that court would rule." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In making this guess, this court may rely on, *inter alia*,

No. 15-30795

the decisions of the Louisiana Supreme Court in analogous cases and lower state court decisions.[3]  *See Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010).

### III. UNJUST ENRICHMENT UNDER LOUISIANA LAW

Under Louisiana law, a plaintiff must establish the following elements to succeed on an unjust enrichment claim: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other available remedy at law." *Pinegrove Elec. Supply Co. v. Cat Key Const., Inc.*, 88 So. 3d 1097, 1100 (La. Ct. App. 2012); *accord Indus. Cos., Inc. v. Durbin*, 837 So. 2d 1207, 1213–14 (La. 2003).  The district court held that Zeising failed to establish the second and fourth elements.  We agree[4] and, accordingly, find no error in the district court's grant of summary judgment to Shelton. We address the impoverishment and justification elements in turn.

---

[3] More specifically, this court bases its *Erie* guess on the following:

(1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Centennial Ins.*, 149 F.3d at 382.

[4] Judge Haynes agrees that Zeising failed to establish the impoverishment element and therefore would not reach the question of whether Zeising failed to establish the justification or cause element.  Judge Southwick agrees that Zeising failed to establish the justification or cause element but does not agree that Zeising failed to create a fact issue on the impoverishment element.  Accordingly, Judge Haynes does not concur in Part III.B of this opinion, and Judge Southwick does not concur in Part III.A of this opinion.

## A. Impoverishment

"[A] person is impoverished when his patrimonial assets diminish or his liabilities increase." La. Civ. Code Ann. art. 2298 cmt. (b).  Louisiana courts have further clarified that "one is impoverished when . . . a 'justified expectation of gain' is prevented." *Munro v. Carstensen*, 945 So. 2d 961, 966 (La. Ct. App. 2006).   Zeising argues that he justifiably expected to gain from the restaurant deal and that he was prevented from realizing this gain when Shelton pursued the deal alone.  Although Zeising performed valuable services that may have improved the ultimate transaction completed by Shelton, we agree with the district court that Zeising has suffered no impoverishment under Louisiana law.

First, Zeising's efforts in pursuing the restaurant deal were simply a "cost of doing business" and therefore cannot constitute an impoverishment. *Ramsey Const. Co. v. Bunch*, 393 So. 2d 199, 199 (La. Ct. App. 1980).  "The root principle of an unjustified enrichment . . . is that the plaintiff suffers an economic detriment for which he should not be responsible." *Scott v. Wesley*, 589 So. 2d 26, 27 (La. Ct. App. 1991).  A Louisiana appellate court applied this principle in *Ramsey*, 393 So. 2d at 199.  There, the court noted that the plaintiff had expended significant efforts and that the plaintiff "stood to make a staggering sum as general contractor if [the defendant] could 'swing the deal.'" *Id.* at 199.  In rejecting the plaintiff's unjust enrichment claim following the collapse of the deal, the court held that the plaintiff's efforts "did not result in a[n] . . . 'impoverishment' to [the] plaintiff, no more than one could consider business advertising or unsuccessful bidding an 'impoverishment' of the advertiser or bidder." *Id.*  The court explained that the plaintiff there "simply was incurring a cost of doing business, in hope of making a lot of money if the transaction came to fruition." *Id.*  Zeising finds himself in a similar position. He expended significant efforts, but the transaction did not come to fruition in

6

the way that Zeising hoped it would.  Based on the court's decision in *Ramsey*, we cannot conclude that Zeising suffered an impoverishment, as his efforts were simply "a cost of doing business."  *Id.*

Second, Zeising cannot satisfy the impoverishment element because he acted "out of his own negligence" and "at his own risk" by pursuing the restaurant transaction without a written contract with Shelton.  *Charrier v. Bell*, 496 So. 2d 601, 607 (La. Ct. App. 1986).  In *Charrier*, a Louisiana intermediate appellate court noted that the action for unjust enrichment was "derived from the similar French action" and was "influenced greatly by French Civil Code articles."  *Id.* at 606; *see also Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 431–32 (La. 1967).  The court added that "[t]he impoverishment element in French law is met only when the factual circumstances show that it was not a result of the plaintiff's own fault or negligence or was not undertaken at his own risk."  *Id.*

In this case, Zeising, who is a sophisticated businessman, proceeded at his own risk.  Zeising argues that he was not negligent because he relied on the various actions taken by Shelton, which suggested that the two were partners.  However, all of the actions taken by Shelton are consistent with Shelton pursuing his own interests and do not suggest that Zeising was unaware of the risk in pursuing the restaurant transaction without a written contract.  Zeising also argues that, while he may have assumed the risk that the restaurant transaction would fail, he never assumed the risk that the transaction would succeed but that he would be excluded from it.  This distinction between types of risk involved in a transaction has never been recognized by either a Louisiana court or this court, and we decline Zeising's invitation to extend Louisiana law here.  Therefore, the district court committed no error in concluding that, under *Charrier*, Zeising proceeded at

his own risk and thus could not satisfy the impoverishment element of his unjust enrichment claim.[5]

## B. Justification or Cause

Under Louisiana law, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code Ann. art. 2298. "The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law." *Id*. The Supreme Court of Louisiana has explained that

> "Cause" is not in this instance assigned the meaning commonly associated with contracts, but, rather, it means that the enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee . . . and the enrichee . . . or between a third party . . . and the enrichee.

*Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 122 (La. 1974). That court has further explained that, with respect a juridical act:

> The issue, then, is whether there is a contract, express or implied, between [the impoverishee] and [the enrichee] or [a third party] and [the enrichee] which would justify the enrichment of [the enrichee]. If there is such, the contract is the law between them and it serves as a legal cause or justification for the enrichment.

*Id*. In the instant case, the district court held that "[a]ny enrichment which came to Shelton may fairly be attributed to the valid juridical acts which comprise the purchase and finance of the Popeyes restaurants." We agree. Shelton's enrichment was the result of his contract with third

---

[5] Zeising criticizes the district court's reliance on *Charrier* as improperly importing the tort doctrines of contributory negligence and assumption of risk to his unjust enrichment claim. However, the district court did not improperly import tort doctrines in this case, as the *Charrier* court explained that a plaintiff's own negligence or his assumption of risk are intrinsic to the impoverishment element itself—not general defenses to unjust enrichment claims as Zeising appears to argue. *Charrier*, 496 So. 2d at 606. Similarly, Zeising contends that Article 2298 displaced the unjust enrichment claim as discussed in *Charrier*. He is incorrect, as the Louisiana Supreme Court has held that Article 2298 merely codified existing law. *Durbin*, 837 So. 2d at 1213–14.

parties, i.e., the sellers of the restaurants, and this contract was a valid juridical act. Louisiana and Fifth Circuit caselaw support the conclusion that, based on this contract, Zeising cannot establish that Shelton's enrichment was without cause. In particular, we find four cases instructive on this point.

First, in *Conn–Barr, LLC v. Francis*, 103 So. 3d 1208, 1208, 1210–14 (La. Ct. App. 2012), an enrichee–defendant sold its business to a third party, and the court held that this sale constituted a valid juridical act and that, therefore, the plaintiff's unjust enrichment claim failed. Specifically, the plaintiff and defendant had signed a contract, which included a "finder's fee" under which the plaintiff would be paid for successfully locating an investor for the defendant's business. *Id.* at 1210. The defendant later sold her entire business to a buyer, and the plaintiff sued on the contract and, in the alternative, advanced an unjust enrichment claim when the defendant failed to pay the finder's fee. *Id.* at 1210, 1213–14. The court first rejected the contractual claim and, in holding that the plaintiff's unjust enrichment claim also failed, explained that the defendant's "enrichment resulted from a valid juridical act or the law, insofar as it resulted from the sale of the business." *Id.* at 1214.

Zeising finds himself in a similar situation as the plaintiff in *Conn-Barr*. As in *Conn–Barr*, any enrichment enjoyed by Shelton was the result of a "valid juridical act," *id.*, i.e., the completion of the restaurant transaction between Zeising and TMC, which no party claims was invalid or illegal. Therefore, Zeising cannot establish the justification element of his unjust enrichment claim. While Zeising attempts to distinguish *Conn–Barr* because, unlike in the present matter, an unfulfilled contract existed between the plaintiff and defendant, *see id.* at 1215, that distinction is irrelevant here. Despite the existence of a contract between the plaintiff and defendant, the *Conn–Barr* court specifically relied upon a valid juridical act by the defendant—receiving

compensation from the sale of the business—in rejecting the plaintiff's unjust enrichment claim. *Id.* This valid juridical act existed independently of any contract between the plaintiff and defendant, so we cannot say that *Conn-Barr* is inapposite to the instant case.

Second, in *Creely v. Leisure Living, Inc.*, 437 So. 2d 816 (La. 1983), the court rejected the plaintiff's unjust enrichment claim because the enrichee–defendant had signed a contract with a third party, justifying the defendant's enrichment. *Id.* at 822. In particular, a real estate broker had signed a listing agreement with a homebuilder, under which the broker would receive a commission for the sale of homes. *Id.* at 817–18. One of the builder's houses was sold after the agreement between the builder and broker had expired, and the Supreme Court of Louisiana held that the broker was entitled to no commission under its listing contract with the builder. *Id.* at 817, 820. The court further held that the broker failed to satisfy the justification element of its unjust enrichment claim because the cause of the builder's enrichment (not having to pay a commission to the broker) was the builder's contract with the buyer, which was "the result of [the builder's] investment of skill, time, labor and financing and his good fortune in . . . finding a buyer." *Id.* at 822; *see also Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 711 (La. Ct. App. 1994) ("[J]ustification for the enrichment may also arise from a party's own efforts in securing the enrichment."). Similarly, in this case Shelton's enrichment can be traced to his contract with TMC and Shelton's own efforts and skill.

Third, in *Garber v. Badon & Ranier*, 981 So. 2d 92, 94–95 (La. Ct. App. 2008), an attorney brought an unjust enrichment claim against a law firm. The attorney worked part time with the law firm and claimed that he participated in a joint venture with the firm partners, that he was a special partner, and that the firm partners were unjustly enriched when they refused to pay him a portion of the fees that the firm collected for working on a series of cases. *Id.*

at 95–96. A Louisiana intermediate appellate court rejected the unjust enrichment claim and held that "the enrichment of the defendants has a cause and is justified as it is comprised of fees earned through great effort by the firm in the tobacco litigation resulting from a valid contract between the [the defendants' firm] and a third party, its client(s)." *Id.* at 101. Thus, as in this case, the plaintiff was excluded from a profitable transaction despite his perception that he was a joint venturer with those who did profit from the transaction.

Finally, in *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557 (5th Cir. 1992), an unsecured creditor asserted an unjust enrichment claim, arguing that its actions taken to preserve collateral resulted in the unjust enrichment of a secured creditor. *Id.* at 558–59. This court held that "there [was] a justification in law" for the defendant's enrichment, as "[t]here was a contractual relationship between [the defendant] and [a third party] and, as a secured creditor of [the third party], [the defendant] would be entitled to be paid first." *Id.* at 560. Similarly, the contract between TMC and Shelton is a sufficient "justification in law" for any enrichment of Shelton. *Id.*

Taken together, *Conn-Barr*, *Creely*, *Garber*, and *SMP Sales*, support the district court's conclusion that Zeising failed to satisfy the justification element of his unjust enrichment claim because Shelton's enrichment was the result of his contract—which was a valid juridical act—with a third party, TMC.[6] Zeising counters that nothing in the contract between Shelton and TMC provides that Shelton was to receive free professional services from Zeising, that there is at least a question of material fact regarding to what extent

---

[6] Zeising argues that, like *Conn-Barr*, all three of these other cases involved a contract between the plaintiff and the defendant and are thus distinguishable from the instant case, which involves no contract. However, we reject this argument in connection with *Creely*, *Garber*, and *SMP Sales* for the same reasons we reject it in connection with *Conn-Barr*.

No. 15-30795

Shelton benefited from Zeising's services, and that the existence of a formal contract between Shelton and TMC is irrelevant because the only relevant issue is whether Shelton was entitled to free services. All of these arguments miss the mark. The existence of a valid juridical act—Shelton's contract for the purchase of the restaurants—is sufficient to prevent Zeising from satisfying the justification element of his unjust enrichment claim. Accordingly, we find no error in the district court's conclusion that Zeising failed to establish the justification element of his unjust enrichment claim.[7]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[7] Shelton also argues on appeal that Zeising failed to establish the fifth element of an unjust enrichment claim. We need not and do not address that argument.